(941 P.2d 424)
No. 78,513

THE CITIZENS' UTILITY RATEPAYER BOARD, *Appellant*, v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *et al.*, *Appellees*.

Opinion filed June 25, 1997.

*Walker Hendrix* and *Allen Brady Cantrell*, consumer counsel, Citizens' Utility Ratepayer Board, of Topeka, for appellant.

*Eva Powers*, *Susan Stanley*, and *Marianne Deagle*, assistants general counsel, Kansas Corporation Commission, of Topeka, for appellees.

*Frank A. Caro, Jr.*, and *Donna A. McElhinney*, of Polsinelli, White, Vardeman & Shalton, P.C., of Overland Park, and *William R. Drexel* and *Michael C. Cavell*, of Topeka, for intervenor Southwestern Bell Telephone Company.

Before ROYSE, P.J., RULON and MARQUARDT, JJ.

ROYSE, J.: This appeal arises out of a joint application filed by Sprint Communications Company, L.P., United Telephone Company of Kansas, United Telephone Company of Eastern Kansas, United Telephone Company of South Central Kansas, and United

Telephone Company of Southeastern Kansas (Sprint) with the Kansas Corporation Commission (KCC). Sprint asked the KCC to open a generic proceeding to examine Southwestern Bell Telephone Company's (SWBT) costs and determine the prices SWBT could charge for services under interconnection agreements with carriers pursuant to the Federal Communications Act of 1996, 47 U.S.C. § 151 *et seq.*, and the Federal Communication Commission's (FCC) interconnection rules. The KCC granted Sprint's joint application and opened a generic proceeding.

The Citizens' Utility Ratepayer Board (CURB) filed a petition to intervene, alleging that the KCC's order in the proceedings will or may effect the rates paid and service received by residential and small commercial ratepayers. The KCC granted CURB's motion to intervene.

The KCC later adopted a procedural schedule and issued a protective order regarding SWBT's proprietary cost data. The protective order stated in pertinent part that only parties which requested interconnection negotiations with SWBT would have access to the proprietary cost data. Under that order, CURB would be unable to view SWBT's cost data.

CURB timely filed a petition for the KCC to reconsider its protective order, which the KCC denied. CURB then filed its application for judicial review of the protective order to this court.

## JURISDICTION

The first issue we must address is this court's jurisdiction to entertain CURB's appeal. K.S.A. 1996 Supp. 66-118a(b) provides in pertinent part that the Court of Appeals has exclusive jurisdiction to review any agency action of the KCC arising from a rate hearing. The KCC and SWBT argue that this case did not arise out of a rate hearing, because this proceeding does not involve rates a regulated monopoly may charge consumers. They characterize the proceeding as one merely to establish a cost methodology to assist the KCC in setting prices SWBT may charge its competitors.

This argument ignores several statements in the record which characterize this proceeding as a rate hearing. Sprint's joint application asked the KCC to examine SWBT's costs and "determine

the rates that SWBT can charge." The KCC noted this language in its order granting the application. The KCC's order contemplated more than the establishment of cost methodologies; the KCC indicated its goal was to issue a "definitive decision on the cost issues in six months."

In its later order denying requests for reconsideration filed by SWBT and AT&T Communications of the Southwest (AT&T), the KCC described this proceeding as a "generic study to establish rates for SWBT pricing of unbundled elements required for use in negotiations of interconnection agreements." The KCC repeated that description in its order which set forth the procedural schedule and protective order. This latter order also stated: "[T]hrough this docket the Commission will prescribe the costing methodology and determine prices which may be used for interconnection." Finally, the parties have repeatedly recognized that the cost determinations in this proceeding will have a "direct and significant impact" on the effort to develop competition in local exchange services in Kansas.

In addition to the terminology used by the parties in this case, the Federal Communications Act of 1996 makes clear that SWBT's costs form an integral part of the rates SWBT can charge its competitors. Section 252(d) of the Act contains pricing standards and provides that rates for interconnection shall be based on the cost of providing the interconnection or network element, plus a reasonable profit. 47 U.S.C. § 252(d).

This proceeding, then, represents the first of a series of decisions to be made in establishing who pays what for competitive services in Kansas. While this proceeding will not produce a rate schedule, it will determine the cost methodologies and costs which will be used in later proceedings to determine the rates SWBT may receive from its competitors and the rates that they in turn may charge their customers.

We have reviewed the cases cited by the KCC in its motion to transfer to the district court. As CURB notes, those cases all deal with rate changes. This proceeding, however, will establish initial costs to be used in setting rates under interconnection agreements. See *Kansas Gas & Electric Co. v. Kansas Corp. Comm'n*, 14 Kan.

App. 2d 527, 530-31, 794 P.2d 1165, *rev. denied* 247 Kan. 704 (1990); *Midwest Gas Users Ass'n v. Kansas Corporation Commission*, 3 Kan. App. 2d 376, 390, 595 P.2d 735, *rev. denied* 226 Kan. 792 (1979). Moreover, while those cases illustrate what the term "arising from a rate hearing" may include, they provide no basis for concluding that this proceeding is beyond the scope of that term. We decline to adopt the narrow view of "arising from a rate hearing" urged by the KCC.

Intervenor SWBT raises a second challenge to this court's jurisdiction. SWBT argues that K.S.A. 77-608 limits judicial review to "final agency action" and that KCC's protective order is not a final agency action. SWBT characterizes the KCC's protective order as a mere procedural ruling which cannot be equated with a final order.

The "final agency action" requirement was recently examined in *Kansas Pipeline Partnership v. Kansas Corporation Comm'n*, 22 Kan. App. 2d 410, 916 P.2d 76 (1996). In that case, this court determined that because the KCC failed to act within 240 days, contracts submitted for review by Kansas Pipeline Partnership were deemed approved by operation of law. *Kansas Pipeline Partnership* is instructive in two respects. First, it makes clear that the terms "final agency action" and "final order" are not synonymous. 22 Kan. App. 2d at 418. Second, it illustrates the application of the "final agency action" requirement:

"The KCC's denial of KPP's arguments that the contracts were 'deemed approved' due to the expiration of time *is* a final decision on this issue. It has a direct effect on KPP and presents a legal question for our review. Further, ruling on this issue does not disrupt the orderly process of adjudication in the administrative proceeding." 22 Kan. App. 2d at 413-14.

Similarly, in this case, the KCC's ruling on CURB's petition to reconsider the protective order is a final decision on the issue of CURB's access to SWBT's proprietary cost data. It has a direct effect on CURB and presents a legal question for our review. Further, ruling on this issue does not disrupt the orderly process of adjudication in the administrative proceeding.

Even if the KCC's protective order is not a final agency action, we have jurisdiction to consider CURB's appeal. K.S.A. 77-608

authorizes interlocutory review of a nonfinal agency action where postponement of judicial review would result in an inadequate remedy or irreparable harm disproportionate to the public benefit derived from postponement. In this case, the KCC's protective order will be effectively unreviewable if an appeal is delayed until after the KCC has approved cost methodologies and determined prices that SWBT can charge its competitors. If CURB is denied review of SWBT's cost data, a situation is created which cannot be completely rectified. CURB will be placed in the untenable position of trying to show how its examination of witnesses and arguments to the KCC would have differed had it been allowed to review the proprietary cost data. See, *e.g.*, *Skahan v. Powell*, 8 Kan. App. 2d 204, 653 P.2d 1192 (1982) (order disqualifying attorney deemed to be appealable); *Southwestern Bell Tel. Co. v. Kansas Corporation Commission*, 6 Kan. App. 2d 444, 453-54, 629 P.2d 1174, *rev. denied* 230 Kan. 819 (1981) (denial of protective order reviewable).

Whether the KCC's order precluding CURB's access to SWBT's cost data is a final agency action or a nonfinal agency action ripe for interlocutory review, we conclude that this court has jurisdiction to consider CURB's appeal.

## STANDARD OF REVIEW

The applicable standard of review is set forth in K.S.A. 77-621, which codified principles repeatedly recognized by the Kansas courts. See, *e.g.*, *Kansas Gas & Electric Co. v. Kansas Corporation Comm'n*, 239 Kan. 483, 497-98, 720 P.2d 1063 (1986); *Midwest*, 3 Kan. App. 2d at 380-81. Thus, the burden of proving the invalidity of the KCC's action is on CURB, the party asserting invalidity. K.S.A. 77-621(a)(1).

CURB argues that KCC has erroneously interpreted or applied the law and that its protective order is otherwise unreasonable, arbitrary, or capricious. K.S.A. 77-621(c)(4) and K.S.A. 77-621(c)(8). Interpretation of a statute is a question of law, subject to unlimited review on appeal. *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995). "Unreasonable" agency action is action taken without

regard to the benefit or harm to all interested parties. Agency action is "arbitrary and capricious" if it is unreasonable or "without foundation in fact." *Peck v. University Residence Committee of Kansas State Univ.*, 248 Kan. 450, 456, 807 P.2d 652 (1991); *Zinke & Trumbo, Ltd. v. Kansas Corporation Comm'n*, 242 Kan. 470, 474-75, 749 P.2d 21 (1988).

The KCC urges us to apply the substantial evidence standard in reviewing the KCC's protective order. We decline to do so, as that standard of review is inapplicable here. This appeal does not turn on any resolution of a question of fact, but on the KCC's interpretation of K.S.A. 77-521. Moreover, the KCC entered the order at issue on its own motion. No hearing was conducted, and no evidence was presented. Thus, we would have no basis in the record to conclude that the KCC's order was supported by substantial evidence.

## MERITS

CURB argues that the KCC's protective order so seriously impedes CURB's participation in the proceedings that it interferes with CURB's statutory role as "official intervenor" in cases filed before the KCC. K.S.A. 66-1223(b). CURB takes the position that implicit in its statutory authority to intervene is the right to engage in meaningful discovery. CURB further argues that the protective order violates its due process rights. The KCC responds that its protective order is authorized by K.S.A. 77-521(c), which provides that an agency may impose conditions upon an intervenor's participation in the proceedings. Specifically, K.S.A. 77-521(c)(2) provides that the agency may limit an intervenor's "use of discovery, cross-examination and other procedures so as to promote the orderly and prompt conduct of the proceedings." (The KCC also claims reliance on K.A.R. 82-1-225. Because that regulation merely parrots 77-521, we will not discuss it separately.)

Although 77-521(c)(2) authorizes limitations on an intervenor's discovery in order "to promote the orderly and prompt conduct of the proceedings," the KCC makes no argument that the protective order in this case was necessary to assure orderly and prompt proceedings. The protective order makes no mention of 77-521(c)(2).

We find nothing in the record which would warrant the conclusion that depriving CURB of access to information, which is available to other parties to these proceedings, serves the purpose of prompt and orderly proceedings.

The Kansas Administrative Procedure Act, K.S.A. 77-501 *et seq.*, is drawn from the 1981 Model State Administrative Procedure Act. Ryan, *The New Kansas Administrative Procedure and Judicial Review Acts*, 54 J.K.B.A. 53, 54 (1985). Thus, the comments to the provision in the Model Act corresponding to 77-521 are instructive:

"Subsection (c), authorizing the presiding officer to impose conditions upon the intervener's *[sic]* participation in the proceedings, is intended to permit the presiding officer to facilitate reasonable input by interveners *[sic]*, without subjecting the proceedings to unreasonably burdensome or repetitious presentations by intervenors." Comment, 1981 Uniform State Administrative Procedure Act § 4-209, 15 U.L.A. 84 (1990).

The KCC has made no argument in this case that its protective order was necessary to prevent burdensome or repetitious presentations or discovery requests by CURB.

The KCC attempts to justify the protective order by referring to K.S.A. 66-1220a, the statute governing disclosure of trade secrets. K.S.A. 66-1220a provides:

"(a) The state corporation commission shall not disclose to or allow inspection by anyone, including but not limited to parties to a regulatory proceeding before the commission, any trade secret or confidential commercial information of a corporation, partnership or individual proprietorship regulated by the commission unless the commission finds that disclosure is warranted after consideration of the following factors:

"(1) Whether disclosure will significantly aid the commission in fulfilling its functions;

"(2) the harm or benefit which disclosure will cause to the public interest;

"(3) the harm which disclosure will cause to the corporation, partnership or sole proprietorship; and

"(4) alternatives to disclosure that will serve the public interest and protect the corporation, partnership or sole proprietorship."

One problem with the KCC's reliance on 66-1220a on appeal is that the KCC's protective order and its order denying CURB's motion for reconsideration never mention 66-1220a. Second, this

proceeding was opened for the very purpose of reviewing SWBT's cost studies, as a "necessary prerequisite for establishing the cost based rates required" by the Federal Communications Act of 1996. Third, the KCC has not explained how disclosure to CURB of SWBT proprietary cost study information will harm the public or SWBT, in light of the fact that the very same information has already been made available to SWBT's competitors. Finally, the KCC made no effort to explore alternative measures to foreclosing CURB's access to the materials, such as the procedures it adopted to limit the use and further disclosure of confidential information by those parties which were permitted to review the information.

The KCC contends that this proceeding is simply a bilateral negotiation/arbitration process to facilitate agreement between carriers, and, thus, CURB really has no interest that will be substantially affected by these proceedings. This contention is not persuasive. Instead, it reflects a belated attempt to recast the nature of this proceeding. Sprint's application made clear that it sought a generic proceeding which would involve all interested parties, "not just those involved in pending arbitrations." The KCC's order opening a general investigation noted that the Federal Communications Act of 1996 imposes strict time limits on arbitration proceedings. Because it considered resolution of cost issues within the time limits for arbitration to be "unrealistic," the KCC granted Sprint's application to allow the necessary in-depth examination of cost issues. It also bears mentioning that the KCC captioned this matter with the abbreviation "GIT," rather than the "ARB" label which it applied to arbitration proceedings. Finally, the arguments now made on appeal by the KCC to characterize this proceeding as simply a matter between negotiating parties are the very same arguments urged below by SWBT in opposition to Sprint's application and rejected by the KCC when it opened this proceeding.

The KCC argues that nothing in the Federal Communications Act of 1996 or the Kansas Telecommunications Act, K.S.A. 1996 Supp. 66-2001 *et seq.*, provides for the exchange of proprietary cost data to non-negotiating intervenors. This is a red herring. Nothing in the federal or state acts mentions generic proceedings at all.

The KCC's final suggestion that CURB will be able to file testimony, submit briefs, and cross-examine witnesses in this proceeding, even without access to the cost studies, is not persuasive. The fallacy of this contention may be seen by examining the KCC's explanation in its order denying reconsideration: "CURB may participate but will not know the exact numbers." Such "participation" in a proceeding to investigate cost studies and determine prices can hardly be viewed as meaningful.

In summary, we have considered the arguments made by the KCC and SWBT in support of the KCC's protective order and find them to be without merit. By singling out CURB and refusing it access to confidential cost study information (which was nonetheless available to SWBT's competitors), the KCC misapplied the law, and its action was unreasonable, arbitrary, and capricious. In light of this conclusion, we need not address CURB's due process arguments. But see *Mobil Exploration & Producing U.S. Inc. v. Kansas Corporation Comm'n*, 258 Kan. 796, 818-25, 908 P.2d 1276 (1995).

Reversed.