(7 P.3d 311)

No. 84,085

WILLIAMS GAS PIPELINES CENTRAL, INC., *Appellant*, v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Appellee*.

Opinion filed May 19, 2000.

*Gary W. Boyle* and *Jay V. Allen*, of The Williams Companies, Inc., of Tulsa, Oklahoma, and *John C. Frieden* and *Kevin M. Fowler*, of Frieden, Haynes & Forbes, of Topeka, for appellant.

*John McNish*, of Kansas Corporation Commission, and *J. Michael Peters*, of Young, Bogle, McCausland, Wells & Blanchard, P.A., of Wichita, for appellee.

Before KNUDSON, P.J., PIERRON, J., and ROBERT G. JONES, District Judge Retired, assigned.

KNUDSON, J.: Williams Gas Pipelines Central, Inc. (Williams) filed this action for judicial review after the Kansas Corporation Commission (KCC) opened a docket and entered an investigation order regarding ad valorem taxes collected by interstate gas pipeline companies from natural gas customers. Williams also sought declaratory and injunctive relief. The district court dismissed Williams' petition after concluding the investigation order was a nonfinal agency action not ripe for judicial review. Williams appeals.

We affirm. The KCC's order constitutes a nonfinal agency action, and Williams has not shown postponement of judicial review would result in an inadequate remedy or irreparable harm. Additionally, the district court did not err in its dismissal of Williams' action seeking declaratory and injunctive relief.

From 1978 to 1993, the maximum lawful price that a producer could charge its pipeline customers for natural gas was specified in the Natural Gas Policy Act (NGPA). *Public Service Co. of Colorado v. F.E.R.C.*, 91 F.3d 1478, 1481 (D.C. Cir. 1996), *cert. denied* 520 U.S. 1224 (1997). Under the NGPA, a producer could increase

that price in order to recover its payment of a state severance tax. The Federal Energy Regulatory Commission (FERC) concluded the Kansas ad valorem tax did not qualify as a severance tax and ordered producers to refund the Kansas taxes they had collected. 91 F.3d at 1481-82. Upon a petition for review, the court upheld FERC's interpretation of the Kansas ad valorem taxes and also held the producers' liability to refund all Kansas ad valorem taxes collected began in October 1983. 91 F.3d at 1492.

Later, FERC required interstate gas pipeline companies to collect all ad valorem taxes that had been improperly paid by natural gas customers but then limited refunds to only those customers falling under FERC's jurisdiction. FERC did not address refunds for non-FERC jurisdiction customers. FERC also required the pipelines to file copies of the refund report with the state regulatory agency having jurisdiction over such pipeline.

As a result of the FERC order, KCC staff filed a motion requesting an investigation into the distribution of Kansas ad valorem tax refunds from interstate pipeline companies to KCC jurisdictional retail customers for the period of 1983 to 1988. It estimated about $6.8 million of the Kansas ad valorem tax refunds received by nine pipeline companies were non-FERC jurisdictional. Williams filed an objection to the motion. It argued KCC no longer had jurisdiction over Williams because Williams did not make direct retail sales of gas after May 18, 1994. It now only transported gas which was subject to the exclusive jurisdiction of FERC. The KCC staff argued jurisdiction over Williams existed because the overcharges were made when Williams made retail sales in Kansas and was subject to its jurisdiction.

KCC found it had jurisdiction over the refunds for (Kansas jurisdiction) ad valorem tax refunds being held by the interstate pipeline companies which were due to direct retail sales to Kansas customers. It ordered an investigation to determine the amount of any refunds to Kansas retail customers and the procedure to make such refunds. After Williams' petition for reconsideration was denied, it filed a petition for judicial review and request for declaratory judgment and injunctive relief with the district court.

In response, KCC filed a motion to dismiss. KCC argued Williams' petition for judicial review was an improper interlocutory appeal of a nonfinal agency action under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.* The KJRA was the exclusive remedy for review of KCC orders. Williams asserted that under K.S.A. 77-607 the decision was an appealable final action by an agency, and declaratory and injunctive relief were proper because the KCC was acting in an unlawful manner and without authority.

The district court concluded K.S.A. 77-607(b)(1) was the proper test to determine whether the KCC's decision was a final agency action subject to judicial review. KCC had only initiated an investigation, making Williams' appeal interlocutory. The district court also concluded Williams had not met the test to grant an interlocutory appeal, granted KCC's motion, and dismissed the appeal. Williams appeals.

The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law. If the district court lacked jurisdiction, the appellate court likewise did not acquire jurisdiction over the subject matter of the appeal. *Sandlin v. Roche Laboratories, Inc.*, 268 Kan. 79, 85, 991 P.2d 883 (1999). "Whether a party is required to or has failed to exhaust administrative remedies is a question of law over which appellate review is unlimited." 268 Kan. 79, Syl. ¶ 1.

Actions by the KCC, other than those arising from a rate hearing, are subject to review by the district court and are governed by the KJRA. See K.S.A. 1999 Supp. 66-118a(b); K.S.A. 66-118c; K.S.A. 77-609(a). The KJRA provides the exclusive means of obtaining judicial review of an agency action. K.S.A. 77-606. A person who has standing, exhausted all administrative remedies, and timely filed a petition for review is entitled to judicial review of "final agency action." K.S.A. 77-607(a).

" 'Final agency action' means the whole or a part of any agency action other than nonfinal agency action." K.S.A. 77-607(b)(1). "Nonfinal agency action" is defined as "the whole or a part of an agency determination, investigation, proceeding, hearing, conference or other process that the agency intends or is reasonably be-

lieved to intend to be preliminary, preparatory, procedural or intermediate with regard to subsequent agency action of that agency or another agency." K.S.A. 77-607(b)(2).

An interlocutory review of nonfinal agency action can be taken "only if: (a) It appears likely that the person will qualify under K.S.A. 77-607 for judicial review of the related final agency action; and (b) postponement of judicial review would result in an inadequate remedy or irreparable harm disproportionate to the public benefit derived from postponement." K.S.A. 77-608.

Williams relies upon two opinions of this court to support its contention the KCC order is a final agency action: *Citizens' Utility Ratepayer Bd. v. Kansas Corporation Comm'n*, 24 Kan. App. 2d 63, 941 P.2d 424, *rev. denied* 262 Kan. 959 (1997) (*CURB*), and *Kansas Pipeline Partnership v. Kansas Corporation Comm'n*, 22 Kan. App. 2d 410, 916 P.2d 76, *rev. denied* 260 Kan. 994 (1996) (*KPP*).

In *CURB*, the KCC opened a generic docket to examine Southwestern Bell Telephone Company's (SWBT) costs and determine the prices the utility could charge for services under interconnection agreements with carriers. A protective order was entered to protect SWBT's proprietary secrets preventing the Citizens' Utility Ratepayer Board (CURB) from reviewing certain corporate documents. CURB sought judicial review of the order, and SWBT argued that under K.S.A. 77-607[1], the KCC protective order is not a final agency action permitting immediate judicial review.

In rejecting SWBT's argument, the court relied extensively on its earlier decision in *KPP* and concluded the KCC protective order did constitute "final agency action." 24 Kan. App. 2d at 66. But the court did not stop there. Significantly, the court added:

"Even if the KCC's protective order is not a final agency action, we have jurisdiction to consider CURB's appeal. K.S.A. 77-608 authorizes interlocutory review of a nonfinal agency action where postponement of judicial review would result in an inadequate remedy or irreparable harm disproportionate to the public benefit derived from postponement. In this case, the KCC's protective order will be effectively unreviewable if an appeal is delayed until after the KCC has approved

---

[1] In the published opinion, reference to K.S.A. 77-608 is a typographical error.

cost methodologies and determined prices that SWBT can charge its competitors. If CURB is denied review of SWBT's cost data, a situation is created which cannot be completely rectified. CURB will be placed in the untenable position of trying to show how its examination of witnesses and arguments to the KCC would have differed had it been allowed to review the proprietary cost data. [Citations omitted.]

"Whether the KCC's order precluding CURB's access to SWBT's cost data is a final agency action or a nonfinal agency action ripe for interlocutory review, we conclude that this court has jurisdiction to consider CURB's appeal." (Emphasis added.) 24 Kan. App. 2d 66-67.

In *KPP*, 22 Kan. App. 2d 410, the Kansas Pipeline Partnership (KPP) entered into contracts with another company and submitted the contracts to the KCC for approval. While KCC's approval was pending, FERC asserted jurisdiction over KPP as an interstate pipeline. The KCC then issued a stay which included a finding that the 240-day requirement under K.S.A. 66-117(b) for deciding whether to decline or accept the contracts began anew because FERC's assertion of jurisdiction was a substantial alteration of the facts. KPP opposed the stay and requested KCC to reconsider. Prior to the expiration of the statutory period, FERC clarified its order, stating KPP could continue to undertake all other activities authorized by FERC and KCC. After the statutory period expired, KCC denied KPP's motion for reconsideration. KPP appealed.

An issue before the court was whether the decision was a reviewable order under the KJRA. By applying the relevant considerations of *Southwestern Bell Tel. Co. v. Kansas Corporation Commission*, 6 Kan. App. 2d 444, 629 P.2d 1174, *rev. denied* 230 Kan. 819 (1981), this court found KCC's order staying a decision on the contracts had a direct effect on KPP and presented a legal question for review, and the appeal did not disrupt the orderly process in the administrative proceeding. *KPP*, 22 Kan. 2d at 413.[2] Williams argues this is the test to determine whether an order is a "final

---

[2] On pages 413-44, beginning with the paragraph "By applying the relevant consideration of *Southwestern Bell* . . ." should be referring to *Southwestern Bell Tel. Co. v. Kansas Corporation Commission*, 6 Kan. App. 2d 444, 629 P.2d 1174, *rev. denied* 230 Kan. 819 (1981), rather than *In re Application of Southwestern Bell Tel. Co.*, 9 Kan. App. 2d 525, 685 P.2d 304, *rev. denied* 236 Kan. 875 (1984), an earlier citation also appearing on page 413 of the opinion.

agency action." Understandably, Williams minimizes the alternative holding in *KPP* that the agency order was subject to judicial review as an interlocutory order under K.S.A. 77-608. See 22 Kan. App. 2d at 414.

In *Southwestern Bell*, this court considered a KCC order which denied a protective order of documents contended by SWBT to contain trade secrets or other confidential information. In accepting jurisdiction, this court did express the rationale relied upon by *KPP*. However, we would note the *Southwestern Bell* court was not confronted with a statutory dichotomy of "final agency action" and "nonfinal agency action" because the decision predated enactment of the KJRA. The issue was resolved under principles of agency law regarding the degree of "finality" or "ripeness" required to justify judicial intervention. 6 Kan. App. 2d at 453. We conclude the reasoning and holding in *Southwestern Bell* is persuasive authority to decide whether a KCC order is reviewable as an interlocutory order, but not whether it is reviewable as a "final agency action."

Here, the district court found, under K.S.A. 77-607(b)(1), KCC's jurisdiction decision was not a final agency action because KCC had only initiated an investigation. It concluded judicial review could only be as an interlocutory appeal under K.S.A. 77-608, and Williams had not met the requirements of the statute. We agree with the district court.

We hold institution of an investigation docket does not as a matter of law represent "final agency action" that would afford judicial review under K.S.A. 77-607. KCC has taken no evidence and has not entered any definitive holding that will be binding upon Williams. Further, FERC's decision disavowing the power to order refunds of non-FERC jurisdiction customers makes questionable Williams' claim that KCC lacks jurisdiction. This is not a situation where an agency's actions are plainly beyond its jurisdiction or proceedings are contemplated that cannot result in a valid order. *Cf. Pepsico, Inc. v. F.T.C.*, 472 F.2d 179 (2d Cir. 1972). That question may be left for answer on another day.

Comparing this case with *Southwestern Bell* and *KPP*, Williams' appeal was also not ripe for interlocutory appeal under K.S.A. 77-

608. In *Southwestern Bell*, Southwestern Bell could have suffered irreparable harm if the KCC wrongfully disclosed the confidential information. Release of confidential information to outside entities could have a devastating effect to a company. In *KPP*, KPP could have suffered irreparable harm by missing contract deadline dates if the KCC continued to stay its decision.

Here, Williams has not shown it will suffer an immediate detrimental result which is disproportionate to the public benefit derived from postponement which is required for K.S.A. 77-608(b). Expense and inconvenience of an administrative hearing, without more, does not constitute irreparable harm. *Cf. Niagara Mohawk Power Corp. v. F. P. C.*, 538 F.2d 966, 970 (2d Cir. 1976).

Williams' final argument is that the district court erred by not considering its separate request for declaratory judgment and injunctive relief. It argues the exclusivity of the KJRA does not apply when an agency is acting in an unlawful manner and without authority.

This issue was raised in *Kansas Sunset Assocs. v. Kansas Dept. of Health & Environment*, 16 Kan. App. 2d 1, 2, 818 P.2d 797 (1991). In *Sunset*, Kansas Department of Health and Environment (KDHE) issued a wastewater disposal permit to Sunset for its mobile home park operation. It also stated all wastewater would be transported to a more permanent facility when sewer interceptors were available. Almost 3 years later, KDHE notified Sunset sewer interception and collection facilities were being developed in the mobile home park, and it intended to revoke the permit and enforce the permit's provision. Three months later, Sunset filed suit for declaratory relief which was dismissed by the district court.

This court found the permit and notification were agency actions and the KJRA controlled; thus, the suit was filed untimely. 16 Kan. App. 2d at 3. Sunset also argued the KJRA could not deprive it of its substantive rights arising from the Declaratory Judgments Act, K.S.A. 60-1701 *et seq*. The court agreed the KJRA did not deprive a party of the right to declaratory relief. Under the KJRA, a court has authority to grant other relief, including injunctive or declaratory relief, whether preliminary or final, temporary or permanent, or equitable or legal. K.S.A. 77-622(b). To obtain such relief, a

party had to comply with the procedural requirements of the KJRA. "Sunset did not lose its right to a declaratory judgment because of the KJRA supplanting K.S.A. 60-1701 *et seq.*; it lost its right to a declaratory judgment because of its failure to follow the procedural rules set forth in the KJRA." 16 Kan. App. 2d at 3.

The holding in *Sunset* is equally applicable in this litigation. Williams lost its right to declaratory judgment or injunctive relief because of its failure to follow the procedural rules set forth in the KJRA.

For all of the above reasons, we conclude the district court did not err in dismissing Williams' petition.

Affirmed.