(164 P.3d 833)
No. 96,657

CIMAREX ENERGY CO., *Appellant,* v. SEWARD COUNTY BOARD OF COUNTY COMMISSIONERS, *Appellee.*

Opinion filed August 10, 2007.

*Robert J. O'Connor*, of Stinson Morrison Hecker LLP, of Wichita, for appellant.

*Linda Terrill*, of Neill, Terrill & Embree, L.C., of Leawood, for appellee.

Before GREEN, P.J., ELLIOTT and HILL, JJ.

GREEN, J.: Cimarex Energy Co. (Cimarex) appeals from the trial court's judgment upholding the State Board of Tax Appeals (BOTA) discovery order compelling Cimarex to disclose in-house information concerning its remaining recoverable oil and gas reserves to the Seward County Board of County Commissioners (County). In ordering Cimarex to disclose its confidential in-house reserves information, BOTA found that such information was relevant because it could be probative of the fair market value of Cimarex's oil and gas producing properties. On appeal, Cimarex contends that BOTA's decision was not supported by substantial evidence and that the decision was contrary to the law. We agree.

Under K.S.A. 79-1456, a county appraiser is obligated to follow the Oil and Gas Appraisal Guide (Guide) prescribed by the Director of Property Valuation in the valuation of oil and gas producing

properties. No part of the Guide calls for the use of a company's confidential in-house reserves information in the valuation of oil and gas properties. The County concedes that neither it nor Cimarex used Cimarex's confidential in-house reserves information in valuing Cimarex's oil and gas properties. The County, however, argues that it should be able to look at Cimarex's confidential in-house reserves information in order to determine whether Cimarex's valuation under the Guide arrives at fair market value. Nevertheless, because Cimarex's confidential in-house reserves information was never used by either Cimarex or the County in their valuation processes and because the Guide does not prescribe the use of such information in valuing oil and gas-producing properties, the information was not relevant to the proceedings before BOTA.

Moreover, a county appraiser may deviate from the Guide on an individual piece of property only upon a showing of just cause and in a manner consistent with establishing fair market value under K.S.A. 79-1456. Because the County in this case never showed "just cause" to deviate from the valuation method prescribed by the Guide, Cimarex's confidential in-house reserves information was not relevant to a valuation of the property. Therefore, BOTA's finding of "relevance" was not supported by substantial evidence, and its decision was contrary to K.S.A. 79-1456. Accordingly, we reverse BOTA's order compelling Cimarex to disclose its in-house reserves information.

*Facts*

This case arose out of a K.S.A. 79-1448 equalization proceeding which Cimarex brought before BOTA concerning the valuation of one of its oil producing properties and five of its gas producing properties in Seward County, Kansas, for the 2002 tax year. Apparently, the 2002 property tax return was actually filed by Helmerich & Payne. Helmerich & Payne later merged with Cimarex, and Cimarex took over the oil and gas producing properties at issue in this case.

During the course of the administrative proceedings, the County sought and obtained a subpoena for Cimarex to produce documents concerning its in-house oil and gas reserves estimates. Ap-

parently, Cimarex provided some of the requested documents and served the County with its limited objections to disclosing the remainder of the requested information. The County later sought and obtained another subpoena for Cimarex to produce additional information concerning its reserves.

When Cimarex failed to produce the requested documents, the County moved for BOTA to issue an order compelling discovery. Cimarex responded to the County's motion to compel and moved to quash portions of the County's subpoena, arguing: (1) that the information was so highly confidential that a protective order could not provide adequate protection; (2) that the information was not relevant to determining the value of oil and gas producing properties in Kansas for property tax purposes and that the use of such information would be contrary to the uniform valuation procedures set forth in the Guide; and (3) that the requirement of disclosure of such information would have a "chilling effect" on operators seeking review of a county's property tax assessment.

After an evidentiary hearing on the matter, BOTA issued an order granting the County's motion to compel discovery and denying Cimarex's motion to quash.

Cimarex petitioned the Seward County district court for review of BOTA's decision. The case was later transferred to the Shawnee County district court. In a memorandum decision and order, the trial court upheld BOTA's order compelling discovery. The trial court, however, limited the required disclosure to the reserves information for Cimarex's wells in Seward County that were at issue in this case. Cimarex appealed the trial court's order to this court. This court issued an order requiring the parties to show cause why the appeal, which appeared to be interlocutory in nature, should not be dismissed for lack of jurisdiction. After both parties responded to the show cause order, this court retained the case and directed the parties to address the issue in their appellate briefs.

## I. Jurisdiction

The County argues that this court should dismiss the present action for lack of jurisdiction because the action is based on an interlocutory discovery order. Whether jurisdiction exists presents

a question of law over which this court's review is unlimited. *Riedmiller v. Harness*, 29 Kan. App. 2d 941, 942-43, 34 P.3d 474 (2001), *rev. denied* 273 Kan. 1037 (2002).

### A. *Final Agency Action*

Before the trial court, the County raised a similar argument. The trial court rejected the County's argument, finding that BOTA's discovery order was a "final agency action" from which Cimarex could seek judicial review.

Under K.S.A. 77-607(a), a person who has standing, has exhausted administrative remedies, and has timely filed a petition for judicial review is entitled to judicial review of a "final agency action." *Williams Gas Pipelines Central, Inc. v. Kansas Corporation Comm'n*, 27 Kan. App. 2d 573, 576, 7 P.3d 311, *rev. denied* 270 Kan. 904 (2000). The terms "final agency action" and "final agency order" are not synonymous. *Citizens' Utility Ratepayer Bd. v. Kansas Corporation Comm'n*, 24 Kan. App. 2d 63, 66, 941 P.2d 424, *rev. denied* 262 Kan. 959 (1997). A "final agency action" is defined as "the whole or a part of any agency action other than nonfinal agency action." K.S.A. 77-607(b)(1). A "nonfinal agency action" is defined as "the whole or a part of an agency determination, investigation, proceeding, hearing, conference or other process that the agency intends or is reasonably believed to intend to be preliminary, preparatory, procedural or intermediate with regard to subsequent agency action of that agency or another agency." K.S.A. 77-607(b)(2).

In this case, BOTA's decision on the County's motion to compel discovery is a final decision on the issue of the County's access to Cimarex's in-house information relating to its oil and gas reserves. As pointed out by the trial court, nothing is left unresolved regarding the discovery issue except for the enforcement of the order. Therefore, BOTA's decision on the County's motion to compel is a "final agency action" within the meaning of K.S.A. 77-607(b). Therefore, the trial court and this court have jurisdiction to address the matter.

### B. *Petition for Reconsideration*

The County suggests that under K.S.A. 2006 Supp. 77-529, a petition for reconsideration must be filed as a jurisdictional pre-

requisite to invoking judicial review on all orders of BOTA. K.S.A. 2006 Supp. 77-529(a) allows a party to file a petition for reconsideration within 15 days after service of a *final order*. K.S.A. 2006 Supp. 77-529(a) further states: "The filing of the petition is not a prerequisite for seeking administrative or judicial review except as provided in . . . K.S.A. 74-2426, and amendments thereto, concerning orders of the board of tax appeals." K.S.A. 74-2426(b) states: "No *final order* of the board shall be subject to review pursuant to subsection (c) unless the aggrieved party first files a petition for reconsideration of that order with the board in accordance with the provisions of K.S.A. 77-529 and amendments thereto." (Emphasis added.)

Both K.S.A. 2006 Supp. 77-529(a) and K.S.A. 74-2426(b) relate to petitions for reconsideration of a "final order." In *Kansas Pipeline Partnership v. Kansas Corporation Comm'n*, 22 Kan. App. 2d 410, Syl. ¶ 9, 916 P.2d 76, *rev. denied* 260 Kan. 994 (1996), this court defined a "final order" as "one which terminates litigation on the merits and leaves nothing to be done except to enforce the result." It is undisputed in this case that BOTA's order was not a final order on the merits of the equalization proceeding. Therefore, the requirements of K.S.A. 2006 Supp. 77-529(a) and K.S.A. 74-2426(b) have no application here.

## II. BOTA's Discovery Order

Cimarex contends that the trial court erred in upholding BOTA's discovery order compelling it to disclose confidential in-house information concerning its remaining recoverable oil and gas reserves.

## A. Standard of Review

Judicial review of BOTA orders is governed by K.S.A. 77-621. For purposes of this appeal, K.S.A. 77-621 requires this court to grant relief if: (1) the agency has erroneously interpreted or applied the law, K.S.A. 77-621(c)(4); (2) the agency action is based on a factual determination, made or implied by the agency, not supported by substantial evidence when viewed in light of the whole record, K.S.A. 77-621(c)(7); or (3) the agency action is otherwise

unreasonable, arbitrary, or capricious, K.S.A. 77-621(c)(8). See *Board of Saline County Comm'rs v. Jensen*, 32 Kan. App. 2d 730, 732-33, 88 P.3d 242, *rev. denied* 278 Kan. 843 (2004).

In appealing BOTA's decision, Cimarex bears the burden of demonstrating error by the agency. See K.S.A. 77-621(a)(1). When the trial court has reviewed an agency's action before this court's review, we focus on the agency's action and follow the same standards of judicial review. *Helmerich & Payne v. Board of Seward County Comm'rs*, 34 Kan. App. 2d 53, 57, 115 P.3d 149, *rev. denied* 280 Kan. 982 (2005).

BOTA is a specialized agency that exists to decide taxation issues, and its decisions are given great weight and deference when it is acting in its area of expertise. Nevertheless, if BOTA's interpretation of the law is in error, an appellate court will take corrective steps. *In re Tax Appeal of Sprint Communications Co.*, 278 Kan. 690, 694-95, 101 P.3d 1239 (2004).

## B. Relevance of Subpoenaed Information

In reviewing BOTA's order compelling Cimarex to produce the subpoenaed information, we note that ordinarily the enforcement of a subpoena duces tecum is left to the discretion of the enforcing tribunal. Nevertheless, a subpoena duces tecum is subject to K.S.A. 60-245(b), and it must be relevant and not unreasonable or oppressive. *In re Tax Appeal of Collingwood Grain, Inc.*, 257 Kan. 237, Syl. ¶ 8, 891 P.2d 422 (1995).

Here, in rejecting Cimarex's arguments raised in response to the County's motion to compel, BOTA first determined that the requested information was "relevant" to the present case. Specifically, BOTA found that "any information or data on the subject of oil and gas reserves must be deemed relevant, particularly in the discovery stage, because such information could be probative of fair market value." We will first review this finding to determine if it is supported by substantial evidence in the record.

A discussion of the procedure involved in valuing oil and gas producing properties for property tax purposes in Kansas is necessary to understand whether an oil and gas company's in-house reserves information is relevant to valuation. In *Helmerich &*

*Payne,* 34 Kan. App. 2d at 55-56, this court set forth such process as follows:

"For purposes of valuation and taxation in Kansas, all oil and gas leases and wells are considered personal property. K.S.A. 79-329. Persons who own such personal property are required to file a statement of assessment on standard rendition forms on or before April 1 of each tax year. K.S.A. 79-332a. In practice, the county appraiser then reviews the taxpayer's rendition and determines whether changes to the valuation are required and thereafter notifies the taxpayer of the appraised value. See K.S.A. 2004 Supp. 79-1460. The county appraiser is obligated to follow the Oil and Gas Appraisal Guide (Guide) prescribed by the Director of Property Valuation but may deviate from the Guide on an individual piece of property 'for just cause shown and in a manner consistent with achieving fair market value.' K.S.A. 79-1456."

Once the county appraiser mails to the taxpayer the final determination concerning the valuation of the property, the taxpayer has 18 days to appeal to a county hearing panel. K.S.A. 2006 Supp. 79-1606. After the county hearing panel issues its decision, any person aggrieved may appeal to BOTA. K.S.A. 2006 Supp. 79-1609.

Paragraph 4 of the Foreword to the 2002 edition of the Guide reiterates the requirement under K.S.A. 79-1456 that the county appraiser is obligated "to follow the policies, procedures, and guidelines issued by the director of the division of property valuation." Paragraph 4 further states that the county appraiser may deviate from the Guide on individual properties "for just cause shown and in a manner consistent with establishing market value in accordance with the state statutes."

In determining valuation of oil and gas properties, a county appraiser must also consider the factors under K.S.A. 2006 Supp. 79-331(a). *Helmerich & Payne,* 34 Kan. App. 2d at 56. K.S.A. 2006 Supp. 79-331(a) states:

"Except as otherwise provided in subsection (b) of this section, in determining the value of oil and gas leases or properties the appraiser shall take into consideration the age of the wells, the quality of oil or gas being produced therefrom, the nearness of the wells to market, the cost of operation, the character, extent and permanency of the market, the probable life of the wells, the quantity of oil or gas produced from the lease or property, the number of wells being operated, and such other facts as may be known by the appraiser to affect the value of the lease or property."

Our Supreme Court in *Board of Ness County Commr's v. Bankoff Oil Co.*, 265 Kan. 525, 529, 960 P.2d 1279 (1998), quoted with approval the following language that describes the method used for valuing oil and gas leases under the Guide:

" '[T]he theory of the [G]uide is that we are appraising the reserves that are in the ground. And so the guide, the basic mechanics of the guide is to discount income over a period of time to reflect the production capabilities of that reserve. And then it combines with that a rate of decline which is indicating that that reserve is depleting. That is combined with a discount, discounting the money—for the money that is not received until a later time. You get a present worth factor, which is a multiple of money, and that's multiplied times the value, or price of the oil, times the production; and that's to indicate a probable reserve value, from which is deducted the expenses for lifting the oil, to get a net working interest. Then they add the equipment, production equipment, to that, for the working interest. So it's based on the probable life of the reserve, and the probable dollars per barrel that will be received by the operator, or the working interest.' "

This theory provides the basis for the following mathematical formula to compute gross reserves under the Guide:

$$ \underline{\hspace{2cm}} \times \underline{\hspace{1.5cm}} = \underline{\hspace{2cm}} \times \underline{\hspace{1.5cm}} = \underline{\hspace{2cm}} $$

| Total Estimated Amount Production | Net Price | Estimated Gross Income | Present Worth Factor | Gross Reserve Value |
|---|---|---|---|---|

See *Bankoff*, 265 Kan. at 529; *Helmerich & Payne*, 34 Kan. App. 2d at 57.

At the BOTA hearing in this case, the testimony presented by both Cimarex and the County established that the total estimated amount of production is based on a company's reported historical production figures. John Cooper, one of Cimarex's witnesses, worked for the Kansas Department of Revenue from 1976 to September 2002. During his employment with the Department of Revenue, he supervised the evolution of the Guide. Cooper also chaired the committee that annually updated the Guide. Cooper stated that the production information used in valuing oil and gas leases under the Guide is based on a company's reported production information that can be checked through public sources and not on confidential in-house reserves information. Cooper further testified that there is no instruction or recommendation under the

Guide that a company produce its confidential in-house reserves estimates for its production data. Cooper indicated that a company's in-house reserves estimates, which are based on different parameters, are irrelevant for purposes of the Guide. Cooper further indicated that if a county were to demand the use of in-house reserves estimates instead of historical production for purposes of the valuation of oil and gas leases, the uniformity of the Guide's application would be destroyed.

Moreover, Cimarex presented an affidavit and testimony from Ronald Cook, who had served on the Guide committee for the past 20 years. In addition, Cook is a licensed professional petroleum engineer who owns an oil and gas tax consulting business that prepares oil and gas property renditions covering property in Kansas. In preparing for his testimony, Cook prepared his own analysis of Cimarex's reserves based on the in-place value method. The in-place value method is specified in the Guide as an alternative method that can be used for certain wells that do not have sufficient production history to estimate initial recoverable reserves by using a rate-time analysis. The Guide sets forth a four-step process to calculate the in-place value of the reserves. No step in the process requires the use of a company's proprietary in-house reserves information. Cook testified that he did not use or rely on proprietary company reserves estimates or appraisals in preparing his analysis of Cimarex's reserves based on the in-place value method.

Cimarex also presented deposition testimony from Stella Taylor, the Seward County appraiser, and Kerri Huskey, the Seward County oil and gas clerk who prepares oil and gas valuations. During her testimony, Huskey acknowledged that all four steps used in the in-place value method are based ultimately on production history and that nothing in the Guide specifically uses a company's in-house reserves information.

The County's witness acknowledged that the Guide bases a company's reserves estimates on the company's reported historical production. The County's witness was John Hughes, the State Assessed Property Chief with the Property Valuation Division of the

Kansas Department of Revenue. Hughes testified that such historical production figures used in the rendition are available from several publicly accessible sources.

The County conceded at oral arguments that neither it nor Cimarex used Cimarex's confidential in-house reserves information in the valuation of Cimarex's oil and gas properties. The County further admitted that both it and Cimarex used valuation methods prescribed by the Guide. The County contended, however, that it should be able to look at Cimarex's in-house reserves in order to defend its valuation. The County contended that Cimarex's confidential in-house reserves information would be relevant in determining whether Cimarex's valuation process accurately reflects fair market value.

In its appellate brief, the County, in quoting the trial court's decision, argues: " 'The discovery information sought is relevant because it is reasonable to believe that the information gained will be probative of the fair market value of the reserves.' " The County's argument can be reconstructed into the following categorical syllogism:

Syllogism One

| | |
|---|---|
| Major Premise: | All information that it is reasonable to believe will be probative of the fair market value of reserves is discoverable. (Appellee's brief.) |
| Minor Premise: | Cimarex has confidential information that it is reasonable to believe will be probative of the fair market value of its reserves. (Appellee's brief.) |
| Conclusion: | Therefore, Cimarex's confidential information is discoverable. |

This syllogism is logically valid. Although other reasons may exist to modify or to reject the premises or the conclusion, we focus only on the logical problem that this syllogism presents when it is considered along with another coexisting categorical syllogism that applies to the facts of this case:

Syllogism Two

| | |
|---|---|
| Major Premise: | In calculating the value of oil and gas producing properties, all county appraisers are obligated to follow the Guide unless they deviate from the Guide by showing just cause and in a manner consistent with establishing market value in accordance with the state statutes (established by K.S.A. 79-1456 and the Guide). |
| Minor Premise: | To use Cimarex's confidential information in calculating the value of its properties is a deviation from the Guide (uncontradicted testimony of Cimarex's experts). |
| Conclusion: | Therefore, to use Cimarex's confidential information in calculating the value of its properties, just cause must be shown to deviate from the Guide. |

We now have a conclusion in the second syllogism that conflicts with the conclusion in the first syllogism. How do we have these two logically valid syllogisms resulting in conflicting conclusions? The flaw lies in the major premise of the first syllogism: "All information that it is reasonable to believe will be probative of the fair market value of reserves is discoverable." The major premise is overbroad. It claims too much. Moreover, it rejects the settled principles of the Guide. Nowhere in the Guide is there prescribed the use of a company's confidential in-house reserves information to determine valuation. Under K.S.A. 79-1456, the County is required to follow the Guide in the valuation of oil and gas properties. Any deviation from the Guide on an individual piece of property requires the County to show "just cause." K.S.A. 79-1456. As a result, the County clearly attempts to subvert the "just cause" requirement by obtaining Cimarex's confidential in-house reserves information and then labeling it as discovery.

This "just cause" requirement is contained in the major premise of the second syllogism. We know that the major premise of the second syllogism is legally sound. As we stated earlier, the major premise of the second syllogism is established by K.S.A. 79-1456 and the Guide.

In appraising Cimarex's property in the past, the County never deviated from the Guide. Consequently, the County never met the "just cause" requirement to deviate from the Guide. BOTA determined that Cimarex's confidential in-house reserves information was relevant because it could be probative of fair market value. Nevertheless, Cimarex's confidential in-house reserves information was relevant only if there was "just cause" to deviate from the methodology prescribed by the Guide and to use this information to determine fair market value. With no "just cause" showing by the County, the information was not relevant to a valuation of Cimarex's oil and gas properties.

The County's argument can be characterized as attempting to discover Cimarex's confidential in-house reserves information without first showing "just cause" to deviate from the Guide. One cannot, as the County tries to do, reverse the order of things and preserve the validity of the Guide. To deviate from the Guide, the County needed to show "just cause." Hence, the County needed to show that discovery of Cimarex's confidential in-house reserves information would lead to achieving a fair market value for Cimarex's properties. The County never met the "just cause" requirement and instead relied on the Guide in its valuation of Cimarex's oil and gas properties. The County cannot circumvent the "just cause" rule under K.S.A. 79-1456 by obtaining information that is not called for under the Guide through a discovery order and using this information to establish the value of Cimarex's properties.

BOTA's finding that Cimarex's confidential in-house reserves information would be relevant to the valuation of Cimarex's oil and gas producing properties is not supported by substantial competent evidence. Moreover, BOTA's discovery order violated the "just cause" rule in that it authorized the discovery of Cimarex's confidential in-house reserves information when the County had never shown that this information would afford a basis for achieving the fair market value of the properties. Finally, because BOTA never found "just cause" to allow the County to deviate from the Guide to use a company's confidential in-house reserves information to establish fair market value, BOTA's ruling was contrary to K.S.A.

79-1456. Therefore, we reverse BOTA's order under K.S.A. 77-621(c)(4) and (7).

## D. *Additional Arguments*

We point out that Cimarex raises two additional arguments as to why BOTA should not have ordered the disclosure of Cimarex's in-house reserves information: (1) that this information is so confidential that no protective order could adequately provide protection; and (2) that requiring operators of oil and gas properties to disclose such information would have a "chilling effect" on operators seeking property tax relief. Nevertheless, because the trial court's finding of "relevance" was not supported by substantial evidence and because the trial court's decision was contrary to law, it is unnecessary to address Cimarex's additional arguments any further.

BOTA's order compelling Cimarex to disclose its confidential in-house reserves information is reversed.