No. 116,034

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Protest of
BARKER, ROBERT E. and R. GAY
for the Years 2013, 2014, and 2015
in Neosho County, Kansas.

SYLLABUS BY THE COURT

1.

This court may take judicial notice of any official state document prepared by a state official, including appraisal guides published by the Kansas Department of Revenue.

2.

Review by the Court of Appeals of questions of law is unlimited.

3.

An appellate court exercises unlimited review on questions of statutory interpretation without deference to an administrative agency's or board's interpretation of statutes.

4.

The party challenging the Board of Tax Appeals' action has the burden to prove that the action taken by the board was erroneous. K.S.A. 2016 Supp. 77-621(a).

5.

Statutory exemption provisions are strictly construed against the party requesting exemption.

1

6.

All doubts concerning exemption are to be resolved against exemption and in favor of taxation.

7.

The statute providing that an oil lease "together with tubing . . . and all other equipment" used to operate wells is personal property for purposes of taxation does not compel the conclusion that equipment is part of an oil lease for purposes of tax exemption in K.S.A. 2016 Supp. 79-201t(a).

8.

Statutes do not show legislative intent to include equipment within the term "oil lease" for purposes of the tax exemption in K.S.A. 2016 Supp. 79-201t(a).

9.

Equipment used to produce oil is not exempt from taxation pursuant to K.S.A. 2016 Supp. 79-201t(a), the statute exempting certain low production oil leases.

10.

In the absence of statutory or contractual authorization, each party to the litigation is responsible for his or her own attorney fees.

11.

To receive attorney fees pursuant to K.S.A. 79-3268(f), a party must prove that a tax assessment was made without "reasonable basis in law or fact."

Appeal from Board of Tax Appeals. Opinion filed June 30, 2017. Affirmed.

*Robert E. Barker*, of Chanute, for appellants pro se.

*Linus A. Thuston*, county attorney, for appellee Neosho County.

Before LEBEN, P.J., GARDNER, J., and WALKER, S.J.

GARDNER, J.: Robert E. and R. Gay Barker appeal an order of the Board of Tax Appeals (BOTA) which found that equipment used to produce oil is not exempt from taxes pursuant to K.S.A. 2016 Supp. 79-201t(a), the statute exempting certain low production oil leases. Finding that the Barkers have not met their burden of proof to show they fall within that tax exemption, we affirm.

*Factual and procedural background*

Robert Barker leased an oil and gas interest on land that his parents owned. After the death of Robert Barker's mother, ownership of the land transferred to the Barkers by operation of a transfer on death deed. We examined in two previous cases whether that oil lease was terminated by operation of law under the merger doctrine: *In re Barker*, 50 Kan. App. 2d 375, 376, 327 P.3d 1036 (2014), *rev. denied* 302 Kan. 1010 (2015), and *In re Tax Protest of Barker*, No. 111,108, 2014 WL 4435935, at *2 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. 1010 (2015). That issue is not before us in this appeal.

The issue in this appeal relates to the Barkers' receipt of a tax exemption for low production leases under K.S.A. 2016 Supp. 79-201t(a). BOTA found the term "oil lease" includes wells operated by the surface owner and found the Barkers' low production oil wells exempt. But after the Barkers obtained that tax exemption, the County assessed a

3

tax on the equipment the Barkers used to produce oil from those exempted low production wells.

The Barkers appealed the equipment tax to BOTA, then moved for summary judgment and attorney fees. The Barkers argued that equipment is defined as personal property in K.S.A. 79-329 and is part of an oil lease under K.S.A. 2016 Supp. 79-201t(a) so it is therefore exempt. The County objected and argued that the Barkers' summary judgment motion should be denied but filed no written response to the motion. Instead, the County asserted that a hearing was necessary because no authority conclusively addressed whether equipment is part of an oil lease for purposes of the low production tax exemption. The Barkers replied that the County's opportunity to dispute the meaning of "oil lease" had lapsed because the County had not appealed the exemption order.

Before ruling on the Barkers' summary judgment motion BOTA held a hearing. It then concluded that equipment is not included in the term "oil lease" as that term is used in the exemption for low production leases under K.S.A. 2016 Supp. 79-201t(a). The Barkers appeal. We first examine several procedural issues raised by the parties.

I. DID NEOSHO COUNTY ERRONEOUSLY CONSULT AN OIL AND GAS APPRAISAL GUIDE?

The Barkers contend that the County erred in relying on an oil and gas appraisal guide. When the Barkers first argued to the County that equipment was exempt as part of the oil lease, the county appraiser consulted the Division of Property Valuation (DPV) office at the Kansas Department of Revenue. The county appraiser was told that the tax exemption for low producing oil leases did not include equipment. Because the wording in K.S.A. 2016 Supp. 79-201t did not specifically exclude or include equipment, the County relied on the DPV's statement as well as on an oil and gas appraisal guide in deciding not to change the valuation until BOTA could clarify it.

4

Although our caselaw and statutes do not expressly address the equipment issue raised in this case, the Oil and Gas Appraisal Guide of the DPV does. After the text of the relevant exemption statute, K.S.A. 2016 Supp. 79-201t, the guide states "[t]he royalty interest and the production equipment do not qualify for the exemption." 2016 Year Oil and Gas Appraisal Guide, p. iii. The Barkers argue that the County erred in relying on the appraisal guide because its conclusion is not supported by legal authority and is merely part of the preface. They assert that allowing such a use of the appraisal guide would amount to legislation by the DPV and that the Supreme Court does not recognize the guide as a law-making tool.

We disagree. The relevant statute states that the director of the DPV shall adopt "rules and regulations or appraiser directives prescribing appropriate standards for the performance of appraisals in connection with ad valorem taxation." K.S.A. 2016 Supp. 79-505(a). A separate statute requires county appraisers to follow the "policies, procedures and guidelines of [DPV]" when performing their duties. K.S.A. 2016 Supp. 79-1456(a). See *Cimarex Energy Co. v. Board of Seward County Comm'rs*, 38 Kan. App. 2d 298, 299-300, 164 P.3d 833 (2007) ("Under K.S.A. 79-1456, a county appraiser is obligated to follow the Oil and Gas Appraisal Guide [Guide] prescribed by the Director of Property Valuation in the valuation of oil and gas producing properties.").

This court may take judicial notice of any official state document prepared by a state official, including appraisal guides. *State ex rel. Stephan v. Martin*, 230 Kan. 759, 770, 641 P.2d 1020 (1982). We may thus consider the Oil and Gas Appraisal Guide because it is published by the Kansas Department of Revenue.

The caselaw cited by the Barkers as prohibiting use of the guides as law-making tools actually holds that statutory provisions must be considered when assessing property taxes. *Garvey Grain, Inc. v. MacDonald*, 203 Kan. 1, 12, 453 P.2d 59 (1969); *In re EOG Resources, Inc.*, 46 Kan. App. 2d 821, 825-26, 265 P.3d 1207 (2011). The Oil and Gas

5

Appraisal Guide which permits exemption of low producing oil leases, but not of the equipment used in such production, is consistent with K.S.A. 2016 Supp. 79-201t, as we explain more thoroughly below. Accordingly, the County did not err in consulting it.

## II. DID BOTA BECOME AN ADVOCATE FOR THE COUNTY?

The Barkers also argue that BOTA became an advocate for the County because BOTA denied the Barkers' summary judgment motion despite the fact that the County filed no response to it. The Barkers also contend that the County violated K.S.A. 2016 Supp. 60-256(e)(2) and Supreme Court Rule 141 (2017 Kan. S. Ct. R. 204) by failing to file a response brief.

Summary judgment is appropriate when there are no disputed material facts and the movant is entitled to judgment as a matter of law. *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 622, 345 P.3d 281 (2015). Although K.S.A. 2016 Supp. 60-256 states that a response must set out specific facts showing a genuine issue for trial, nothing requires a party to file a response to a summary judgment motion. Instead, when the nonmoving party fails to respond or does not properly respond to a summary judgment motion, "summary judgment should, if appropriate, be entered against that party." K.S.A. 2016 Supp. 60-256(e)(2). Similarly, under Rule 141(f)(2), when a party does not respond to a summary judgment motion, "the uncontroverted factual contentions stated in the moving party's memorandum or brief are deemed admitted for purposes of the motion." (2017 Kan. S. Ct. R. 204). But here, the uncontroverted facts had already been determined in the tax exemption hearing, and the parties agreed that the facts relating to this matter were uncontroverted. The only dispute remaining was whether the Barkers' equipment was exempt, and that issue presented a question of law.

Although the County did not file a response brief, BOTA accepted the County's written objection in lieu of a response. That objection argued that the Barkers' motion for

6

summary judgment raised an unsettled and important issue of law that warranted a full hearing rather than summary judgment. As we determine below, equipment is not included in the meaning of "oil lease" for purposes of the relevant tax exemption statute. Therefore, even assuming application of the summary judgment statute or Rule noted above, it would have been inappropriate as a matter of law for the district court to have granted the Barkers' motion despite the lack of a response by the County.

### III.  DID BOTA ERR IN DETERMINING THAT EQUIPMENT IS NOT PART OF AN OIL LEASE FOR PURPOSES OF THIS TAX EXEMPTION?

The Barkers' primary contention is that the exemption for a low production "oil lease" under K.S.A. 2016 Supp. 79-201t(a) includes the equipment used in producing the oil from that lease. This statute provides:

> "The following described property, to the extent herein specified, shall be and is hereby exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:
>> "(a) All oil leases, other than royalty interests therein, the average daily production from which is three barrels or less per producing well, or five barrels or less per producing well which has a completion depth of 2,000 feet or more." K.S.A. 2016 Supp. 79-201t(a).

The Barkers argue that BOTA correctly defined "oil lease" as including equipment when it granted the tax exemption because its order stated:  "What K.S.A. 2014 Supp. 79-201t(a) refers to as an 'oil lease' is the tangible personal property as set forth in K.S.A. 79-329," and K.S.A. 79-329 includes both oil leases and equipment as personal property for purposes of taxation. The Barkers reason that oil production equipment must be part of an oil lease in this exemption statute because the taxable value of an oil lease is based on its production capacity and one must consider equipment in determining production capacity.

7

We are not persuaded. BOTA's definition of "oil lease" which referred to the "tangible personal property" was made in response to the County's argument that there was no oil lease whatsoever since the Barkers had become not only the operator of the oil wells but also the surface owner. BOTA found that the type of lease the County referred to was a contract that gives one a right to take from the land—a profit-à-prendre—which is an intangible untaxable item. BOTA made its conclusion that 79-201t(a)'s "oil lease" refers to tangible personal property set forth in K.S.A. 79-329 to rebut the County's assertion, not to address the issue raised here—whether equipment is included in or excluded from a low production "oil lease." In any event, we are not bound by BOTA's definition of that term.

Interpretation of statutes is a question of law, and this court has unlimited review. *Gehring v. State Dept. of Transp.*, 20 Kan. App. 2d 246, 248, 886 P.2d 370 (1994). The most fundamental rule of statutory interpretation is that the intent of the legislature governs. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). We exercise unlimited review on questions of statutory interpretation without deference to an administrative board's interpretation of a statute. *Ft. Hays St. Univ. v. University Ch., Am. Ass'n. of Univ. Profs.*, 290 Kan. 446, 457, 228 P.3d 403 (2010). This ruling has been specifically applied to decisions of BOTA by *In re Tax Exemption Application of Kouri Place, L.L.C.*, 44 Kan. App. 2d 467, 472, 239 P.3d 96 (2010). A party challenging the validity of BOTA's action has the burden of proving it was erroneous. *In re Tax Appeal of Scholastic Book Clubs, Inc.*, 260 Kan. 528, 536, 920 P.2d 947 (1996); see K.S.A. 2016 Supp. 77-621(a)(1). That burden here rests on the Barkers.

The first step in determining the intent of the legislature is to look to the plain language of the statute, giving ordinary words their ordinary meanings. *Padron v. Lopez,* 289 Kan. 1089, 1097, 220 P.3d 345 (2009). We must consider various provisions of an act and bring the provisions into workable harmony if possible. *Friends of Bethany Place, Inc. v. City of Topeka*, 297 Kan. 1112, 1123, 307 P.3d 1255 (2013). When

8

construing taxation statutes, we strictly construe them in favor of the taxpayer. However, tax exemption statutes are interpreted differently—we strictly construe them in favor of imposing the tax and against allowing an exemption for one who does not clearly qualify. *In re Tax Appeal of LaFarge Midwest*, 293 Kan. 1039, 1045, 271 P.3d 732 (2012). All doubts concerning exemption are to be resolved against exemption and in favor of taxation. *Scholastic Book Clubs, Inc.*, 260 Kan. at 532. This rule of construction, coupled with the Barkers' burden of proof and the relevant statute's lack of clarity concerning "equipment," largely compels our conclusion in this case.

Kansas cases have not previously determined whether equipment used in the production of oil is considered part of an "oil lease" for purposes of a tax exemption, generally, or for purposes of K.S.A. 79-201t(a)'s exemption for low producing oil leases, specifically. Conceding the lack of controlling authority, the Barkers ask us to consider the court's treatment of equipment in other contexts. For example, in *Cities Service Oil Co. v. Murphy*, equipment used to produce oil was assessed at a percentage of cost adjusted for age, while the oil lease was assessed using varying formulas intended to predict production value for the probable life of the well. 202 Kan. 282, 285-88, 447 P.2d 791 (1968). But the discussion in *Cities Service* shows that the methods of valuing equipment are unlike the methods for valuing the oil leases themselves, cutting against the Barkers' argument. The Barkers also cite two other cases: *In re Tax Appeal Wedge Log-Tech*, 48 Kan. App. 2d 804, 809, 300 P.3d 1105 (2013), which determined whether oil and gas diagnostic equipment was properly classified as commercial and industrial equipment, and *In re Lietz Const. Co.*, 273 Kan. 890, 47 P.3d 1275 (2002), which involved a farm equipment exemption and had nothing to do with low production oil lease exemptions. We do not find those cases to be helpful here.

Both parties view *Board of Ness County Comm'rs v. Bankoff Oil Co.*, 265 Kan. 525, 960 P.2d 1279 (1998), as an important case. *Bankoff* confirmed that the objective of statutes regarding valuation of oil and gas leases is "'to reach the actual fair market value

in the market place of a producing lease, as opposed to a fictional, unrealistic, or arbitrary determination.'" 265 Kan. at 540-41 (quoting *State ex rel. Stephan v. Martin,* 230 Kan. 747, 755, 641 P.2d 1011 [1982]). *Bankoff* explained the difference between taxation of oil leases and most other personal property:

> "Ad valorem taxation of oil and gas leases differs from that of most other personal property in that the assessment is based on the present worth of the lease's future production. The determination of the fair market value of a lease necessarily requires consideration of the expected future income potential of a lease, including the age and probable life of producing wells thereon." 265 Kan. at 541.

Testimony in *Bankoff* was that on established production, which is other than new production, the guide provides the following methodology for arriving at market value for an oil lease:

> "'A. Well, the theory of the guide is that we are appraising the reserves that are in the ground. And so the guide, the basic mechanics of the guide is to discount income over a period of time to reflect the production capabilities of that reserve. And then it combines with that a rate of decline which is indicating that that reserve is depleting. That is combined with a discount, discounting the money—for the money that is not received until a later time. You get a present worth factor, which is a multiple of money, and that's multiplied times the value, or price of the oil, times the production; and that's to indicate a probable reserve value, from which is deducted the expenses for lifting the oil, to get a net working interest. Then they add the equipment, production equipment, to that, for the working interest. So it's based on the probable life of the reserve, and the probable dollars per barrel that will be received by the operator, or the working interest.'" 265 Kan. at 529.

The Barkers apparently contend that because equipment is added for the working interest, it is also included in "oil lease" for purposes of the relevant exemption. But the guide expressly states the contrary. After the text of K.S.A. 2016 Supp. 79-201t, the guide

states "[t]he royalty interest and the production equipment do not qualify for the exemption." 2016 Year Oil and Gas Appraisal Guide, p. iii.

Finding no square answers to our issue in caselaw, we focus instead on the various provisions of the tax code. Read together, they suggest that equipment is not part of an oil lease for purposes of the tax exemption at issue here. First, K.S.A. 79-301 requires all personal property subject to taxation to be listed and assessed. Under K.S.A. 79-329, "oil and gas leases and all oil and gas wells . . . *together with* all casing, tubing or other material therein, and *all other* equipment" used to operate wells are personal property and are to be assessed and taxed as such. (Emphasis added.) The Barkers assert that the phrase "together with" indicates that fixtures, such as casings and tubing and all other equipment, are considered to be part of the oil well or lease. But the Barkers do not cite any authority for that conclusion. We note that the purpose of this statute is merely to classify certain assets as personal property to enable taxation as personal property.

The words "together with" are words of common usage, and we give them their ordinary meaning. The statute uses the conjunction "and," which serves to connect two separate items—here, oil leases and equipment used to operate wells.

"'Together with'" means "'along with:  in addition to:  as well as <the big island, *together with* its smaller neighbors> <these sums *together with* the previous balance> <arrested, *together with* a companion>.'" *Kerry v. Quicehuatl,* 213 Or. App. 589, 594, 162 P.3d 1033 (2007) (quoting Webster's Third New International Dictionary 2404 [unabridged ed. 2002]) (finding a person is "severally liable together with" the underinsured motorist if the person is independently liable to the insured for the same injuries caused by the underinsured motorist); see *Leeks Canyon Ranch, LLC v. Callahan River Ranch, LLC*, 2014 WY 62, ¶ 38, 327 P.3d 732 (Wyo. 2014) (finding a trust conveying a parcel of land "[t]ogether with and subject to all easements of record and sight, and a non-exclusive 60.0 foot road and utility easement" conveyed all those items).

11

"According to Webster's New International Dictionary (2nd Ed.), the expression 'together with' means 'In union with; along with.' Funk & Wagnalls New Standard Dictionary defines the expression as 'in combination with; added to,' and the Oxford dictionary assigns to it, inter alia, the following definition: 'in addition to, or with the addition of; * * *.'" *Gray v. Tarbox*, 14 Wash. 2d 237, 239-40, 127 P.2d 669 (1942) (finding the expression "together with" was the equivalent of "in addition to").

Our tax statute provides that an oil lease "together with . . . tubing . . . and all other equipment" used to operate wells is personal property for purposes of taxation and does not compel the conclusion that equipment is part of an oil lease for purposes of the relevant tax exemption. We cannot reasonably read the phrase "together with" to mean "including." The verbiage indicates that such equipment is what we used to call an "appurtenance"—"[s]omething that belongs or is attached to something else." Black's Law Dictionary 123 (10th ed., 2014); see *Niece v. Percy*, 19 Ohio Cir. Dec. 219, 220, 1906 WL 674 (1906) (noting journal entry in which court appeared to treat equipment as an appurtenance of oil and gas leases), *aff'd* 78 Ohio St. 406, 85 N.E. 1129 (1908). Although the two are related or connected, they are not identical, nor is one encompassed within the other. Accordingly, contrary to the Barkers' position, we read the personal property statute as distinguishing between equipment and the oil lease itself.

The apparent purpose of K.S.A. 2016 Supp. 79-201t is to exempt from taxation certain low producing oil leases because of low productivity and income. The Barkers have shown no logical reason why that purpose would best be served by including equipment, whose taxation generally does not depend on the amount of production, within the low production exemption. See K.S.A. 2016 Supp. 79-1439(b)(2)(B) and (E) (providing that equipment is generally assessed based on a combination of its economic life, retail cost when new, and depreciation).

12

Third, had the legislature desired to exclude equipment from taxation in low producing oil leases, it could have done so expressly. For example, in stating how to determine the taxable value of certain royalty interests and working interests, the legislature expressly excluded equipment from the equation. See K.S.A. 2016 Supp. 79-331(b) (providing the "valuation of the working interest and royalty interest, except valuation of equipment, of any original base lease or property producing oil or gas" after a specific date shall be discounted to reflect the decline in flush production which will occur in subsequent years).

Fourth, persons who own "oil and gas leases or [those] engaged in operating for oil and gas" are subject to a tax penalty for failing to file an *oil and gas property* assessment statement. See K.S.A. 2016 Supp. 79-332a(a). The requirement to file an oil and gas property assessment statement relates to K.S.A. 2016 Supp. 79-1439(b)(2), which sets forth different tax rates based on the category of personal property. Mineral interests (including oil leases) are categorized and assessed separately from equipment. Mineral leasehold interests are assessed at 30%, oil leasehold interests the average daily production from which is five barrels or less are assessed at 25%, but equipment is generally assessed based on a combination of its economic life, retail cost when new, and depreciation. K.S.A. 2016 Supp. 79-1439(b)(2)(B) and (E). Equipment used in producing oil is thus not encompassed within the term "oil lease" in this statute, although equipment is part of oil and gas property.

Perhaps the most compelling statutory provisions which evidence legislative intent to tax equipment separately from oil leases are the parallel provisions found in the exemption statute and the rate statute. The relevant language of the rate statute provides:

> "(2) Personal property shall be classified into the following classes and assessed at the percentage of value prescribed therefor:
>
> . . . .

13

"(B) mineral leasehold interests, *except oil leasehold interests the average daily production from which is five barrels or less*, and natural gas leasehold interests, the average daily production from which is 100 mcf or less, which shall be assessed at 25%, at 30%." (Emphasis added.) K.S.A. 2016 Supp. 79-1439(b)(2)(B).

That language is similar to the language used in the relevant exemption statute, which exempts:

"All oil leases, other than royalty interests therein, the average daily production from which is three barrels or less per producing well, or *five barrels or less per producing well* which has a completion depth of 2,000 feet or more." (Emphasis added.) K.S.A. 2016 Supp. 79-201t(a).

Because equipment and oil leases are categorized and assessed differently, it is unlikely that the legislature intended "oil lease" to include equipment. And the oil lease rate and exemption provisions have similar language which does not appear in the provisions dealing with equipment.

Nothing in the statutory scheme or caselaw expressly states that equipment is included in the definition of "oil lease" for purposes of tax exemption. Instead, various statutes suggest that equipment is not included in that definition. Strictly construing this tax exemption statute, as we must, see *In re Tax Appeal of LaFarge Midwest*, 293 Kan. at 1045, we conclude that equipment is not considered part of an "oil lease" as that term is used in K.S.A. 2016 Supp. 79-201t.

IV. ARE THE BARKERS ENTITLED TO ATTORNEY FEES?

The Barkers argue that BOTA should have awarded attorney fees pursuant to K.S.A. 79-3268(f) because the tax assessment on their equipment was without

14

"reasonable basis in law and fact." The County argues that nonprevailing parties are not entitled to attorney fees. Neither party addresses whether an attorney who acts *pro se*, as Robert Barker does here, may recover attorney fees under this statute; thus, we do not address that issue. See generally *Kay v. Ehrler*, 499 U.S. 432, 435-37, 111 S. Ct. 1435, 113 L. Ed. 2d 486 (1991) (finding the term "attorney's fees" assumes an agency relationship between an attorney and client; thus, a pro se party is not entitled to attorney fees under 42 U.S.C. 1988, regardless of whether the party is an attorney).

"[T]he 'American Rule' . . . which is well established in Kansas, is that in the absence of statutory or contractual authorization, each party to the litigation is responsible for his or her own attorney fees." *Robinson v. City of Wichita Employees' Retirement Bd. of Trustees*, 291 Kan. 266, 279, 241 P.3d 15 (2010). The potential statutory authorization here is found in K.S.A. 79-3268(f), which provides that attorney fees may be awarded if the taxpayer meets certain requirements, including proving that an assessment was made without a "reasonable basis in law or fact."

The Barkers are not entitled to attorney fees because we have found the tax assessed on the Barkers' equipment was reasonably based in law and fact. The County reasonably relied on the Oil and Gas Appraisal Guide which stated that equipment was not included in K.S.A. 2016 Supp. 79-201t(a)'s exemption for low producing leases, the Kansas Department of Revenue advised the county appraiser of the same, and we have upheld that conclusion as legally correct. Therefore, BOTA properly declined to award attorney fees to the Barkers.

Affirmed.