This appeal, by James H. Whigham, Individually and as Executor of the Estate of Bessie A. Whigham, is from a judgment that denied recovery from Travelodge International, Inc., a corporation; Tuscaloosa TraveLodge, a copartnership; and Lloyd M. Baker and Janice Ann Baker, of the sum of approximately $180,000 plus, which Whigham claimed the estate of Bessie A. Whigham was compelled to expend for defendants' benefit in order to protect an interest in certain improved real estate.
We affirm.
Whigham sought recovery under the theories that: there was fraud or overreaching by defendants resulting in execution of a 1973 mortgage by him and Mrs. Whigham; there was breach of a contract obligation regarding the 1973 mortgage; and defendants were liable to him or Mrs. Whigham's estate as sureties for monies paid on their behalf by Whigham or the estate of Mrs. Whigham.
The trial court heard this action without a jury and its findings of fact is an excellent summary of the evidence, and amply supported by it:
"On December 12, 1962, the TraveLodge Corporation, a California corporation, and Loyd M. and Janice Ann Baker entered a `Joint Venture Agreement.' The stated purpose of this joint venture, which was named the Tuscaloosa TraveLodge, was to jointly construct and operate a motel. TraveLodge Corporation assigned to the joint venture a lease of certain property upon which a motel had been partially completed.
"In March of 1963, a lease was executed. TraveLodge Corporation entered the agreement as lessee and throughout the lease Bessie A. Whigham was referred to as lessor. However, in executing the lease both Bessie A. Whigham and James H. Whigham signed as lessor. The lease was for a term of forty-eight years and five months expiring August 31, 2011, on a parcel of property located in Tuscaloosa, Alabama, on which TraveLodge proposed to build and operate a motel as a joint venture with Defendants Loyd and Janice Baker. Prior to that time, TraveLodge, with the approval of the lessor, had executed a mortgage to Life and Casualty Insurance Company of the property in question to secure a loan of $140,000 financing the construction of the motel. Under the terms of the lease, Travelodge agreed to pay rent of $400 per month plus 7 1/2% of the gross annual income in excess of $64,000 and to make the payments on the mortgage to Life and Casualty Insurance Company. The lease also stated that TraveLodge had the right at any time before the full payment of the mortgage to refinance `the principal balance remaining due' at an interest rate not in excess of 6 1/4%, provided that the maturity date of the refinancing was not later than April 7, 1973. In the event of a refinancing of the principal balance remaining upon such terms, TraveLodge agreed in the lease to pay the refinanced balance. The lease expressly provided that `[u]pon written request from TraveLodge, Lessor shall execute any documents not to include the execution of any mortgage NOR THE ASSIGNMENT OF THIS LEASE which may be required to accomplish said refinancing.'
"TraveLodge entered into the lease in accordance with its obligation under a joint venture agreement with Defendant Loyd and Janice Baker dated December 15, 1962. *Page 1080 
After its construction, the motel on the property leased from the Whighams was operated as a joint venture of TraveLodge and the Bakers pursuant to the joint venture agreement.
"In the early part of 1972, after the motel had been in operation for a number of years, Defendant Loyd Baker proposed to Bessie and James Whigham that a new mortgage on terms not contemplated by the refinancing provision of the lease be placed on the motel and property. Under Baker's proposal, the proceeds of the new mortgage loan would be used to pay off the existing mortgage to Life and Casualty Insurance Company and to upgrade the motel facility. The remainder of the proceeds would be divided evenly between TraveLodge and the Bakers, the intent of the Bakers being to use their share to establish a second TraveLodge motel in Tuscaloosa which they felt would generate more business for the existing motel. On May 5, 1972, James and Bessie Whigham signed an agreement stating that they consented to the execution of a new mortgage loan in the principal amount of `$180,000.00, payable over 15 years at an interest rate of 9%,' that they would subordinate their interest in the motel property to the new mortgage, and that they would directly receive none of the proceeds of the new mortgage loan.
"In August of 1973, some 15 months after the May 5, 1972, agreement was signed, the new mortgage loan was obtained. A promissory note payable to City Federal Savings and Loan Association of Birmingham in the amount of $180,000 payable over 15 years at an interest rate of 9% was signed by the joint venture and endorsed by TraveLodge as guarantor. Simultaneously, a new mortgage in favor of City Federal was executed by Plaintiffs Bessie and James Whigham, TraveLodge, and the joint venture. The property pledged as security under the mortgage was the motel property itself
 together with the interest of all the undersigned in that certain lease recorded in Deed Book 488, Page 740, and any amendments and/or modification thereto; (said lease being dated March 20, 1963, and filed for record on April 4, 1963) by and between the above referred to corporation as Lessee and the above referred to individuals as Lessors and the above referred to copartnership as Assignee of the above described real estate situated in Tuscaloosa County, Alabama.
"The proceeds of the new mortgage loan were used to pay off the $58,722.70 balance on the Life and Casualty Insurance Company mortgage and the $18,892.62 balance on a $20,000 loan that had been taken out for purposes of upgrading the motel furnishings in November of 1972. The excess was divided between the Bakers and TraveLodge as specified in the Agreement of May 5, 1972. TraveLodge's share amounted to $47,847.62; the Bakers' share also amounted to $47,847.62, out of which they purchased a TraveLodge franchise for $10,-000 and used the remainder to invest in land on which the new TraveLodge was to be located.
"Payments on the new mortgage debt were made from August, 1973, until November 1974, when the income from the operation of the motel became insufficient to meet the mortgage payments as they became due. Defendant Loyd Baker testified that the joint venture began exploring various methods of remedying the past due status of the debt. He personally contacted the mortgagee with a request that the joint venture be allowed to pay only the interest on the loan until such time as business improved, but the mortgagee rejected this proposal. Travelodge offered to put up one half of the money to cure the arrearage and to lend the Bakers an equal amount to be used by them as their contribution, but Baker was reluctant to increase his personal indebtedness in view of his existing obligations.
"On March 4, 1975, Bessie A. Whigham died, naming her husband James H. Whigham as her sole testamentary heir and as the executor of her estate. On March 21, 1975, Plaintiff James Whigham purchased the note and mortgage from City Federal for the sum of $186,374.98. By letter to TraveLodge dated March 28, 1975, Plaintiff *Page 1081 
James Whigham's attorney gave notice that the note had been purchased from City Federal and requested TraveLodge to contact him if it `care[d] to discuss settlement of this matter with [him] before foreclosure proceedings [were] started. . . .' By a letter to Plaintiff James Whigham's attorney dated April 16, 1975, in response to his letter of March 28th, TraveLodge advised him of the negotiations between TraveLodge and the Bakers concerning the remedy of the mortgage arrearage and indicated that `[i]n any event, it should not be necessary for your office to initiate foreclosure proceedings.' On the next day, April 17, 1975, Plaintiff James Whigham's attorneys published the first foreclosure notice.
"On April 30, 1975, the original complaint in this action was filed requesting (1) an accounting of the proceeds of the August, 1973, loan transaction and a determination of the portion of such proceeds due the plaintiff as executor of the estate of Bessie A. Whigham, (2) immediate possession of motel premises, and (3) the sum of $185,-374.98.
"On May 9, 1975, a foreclosure sale was conducted by Plaintiff James Whigham's attorney. James Whigham attended the sale, as did George Maynard, an attorney representing TraveLodge who testified at trial that he was authorized by TraveLodge to bid up to the amount of $190,000 and that he had made bank wire arrangements for that sum of money to be available in Tuscaloosa on the date of sale. Upon the opening of the bidding, Plaintiff James Whigham instantaneously bid $190,000, the amount of the indebtedness plus legal charges, thereby preempting a bid by Maynard on behalf of TraveLodge. There were no other bidders, and Plaintiff James Whigham purchased the property for himself at the sale. TraveLodge and the Bakers surrendered possession of the motel premises to Plaintiff James Whigham after the sale on May 9, 1975.
"An amended complaint was filed on June 10, 1976, in which certain of Plaintiff's original factual allegations were amended and plaintiff's demand for relief was reduced to a prayer that the Court `issue a judgment in favor of Plaintiffs against said Defendants in said sum of One Hundred Eighty Thousand Dollars, interest and other legal charges paid by the Estate of Bessie A. Whigham for the benefit of the aforesaid Defendants, and the costs of this proceeding.' Plaintiff has advanced three legal theories upon which he claims entitlement to the demanded sum: fraud or overreaching in connection with the August, 1973, mortgage financing; breach of contract obligation with regard to the 1973 mortgage; liability on a suretyship basis for money paid on behalf of the defendants by James Whigham or the estate of Bessie A. Whigham. Based upon the testimony and evidence adduced at trial and on the applicable statutory and case law of Alabama, the Court is constrained to find that the plaintiff is not entitled to recover under any of these theories. The trial court then made the following conclusions:
"I. Plaintiff's Theory of Fraudulent Conduct
"In his original complaint, the plaintiff alleged `that the Estate of Bessie A. Whigham, Deceased, has been fraudulently deprived of $180,000.00.' At the pre-trial conference plaintiff's counsel informed the Court that the plaintiff no longer alleged fraud on the part of the defendants. Therefore, in his amended complaint, the plaintiff struck the word `fraudulently' from the above allegation. However, the same amended complaint contains the allegation that `while both of [the Whighams] were aged and infirm they were approached by Mr. Loyd Baker, one of the Defendants in this cause, and he persuaded them to agree that the mortgage indebtedness on said real property . . . be refinanced. . . .' Moreover, counsel for plaintiff in the brief submitted in lieu of closing argument has contended that `[i]t is even probable that Defendants may be liable for a criminal prosecution for the acts that they have done in this matter as a conspiracy to defraud Plaintiffs, . . . and, certainly, in a Court of Equity they should not be relieved of their liability created by their *Page 1082 
own acts and conduct which amount to fraud.' For these reasons, the Court understands the plaintiff as urging fraudulent deprivation of property in connection with the August, 1973, mortgage financing or some other species of fraud as a theory of recovery and therefore addresses this theory.
"Under the evidence presented at trial, this Court is compelled to find that the consent of the Whighams to the August 1973, mortgage financing was not obtained by means of fraud, misrepresentation, duress, coercion, overreaching or any other improper means and that no other act or omission on the part of the defendants during the entire course of their dealings with the Whighams relative to the August 1973, mortgage furnishes the basis for a claim of fraud, misrepresentation, duress, coercion, overreaching or other improper conduct on the part of the defendants. Accordingly, plaintiff's theory of fraudulent conduct as a basis of recovery cannot be sustained.
"II. Plaintiff's Theory of Breach of Contract
"Plaintiff also advances the theory that the defendants breached a covenant contained in the lease by not maintaining the August, 1973 mortgage and are therefore liable to the plaintiff. In the Amendment to the Complaint, it is alleged that defendants had a duty to pay the installments of the August 15, 1973, mortgage pursuant to the terms of the March 20, 1963, lease, and that any refinancing of the mortgage was to be in accordance with the terms of the lease. While it is true that TraveLodge agreed in the lease to maintain the Life 
Casualty mortgage and any refinancing of that mortgage, it appears from the evidence that the August, 1973 mortgage was not a refinancing of the Life and Casualty mortgage as defined in the lease. Under Article III of the lease, a refinancing to which Travelodge's lease covenant to maintain the Life 
Casualty mortgage applied was one (a) limited to the principal balance remaining due on the Life and Casualty mortgage, (b) payable on equal or lessor terms of interest than 6 1/4%, and (c) maturing not later than April 7, 1973. Article III specified that in the event of such a refinancing, the lessor could not be required to execute a new mortgage or to assign the lease as security. The August, 1973 mortgage loan (a) was in the amount of $180,000 rather than in the amount of the principal balance remaining due on the Life and Casualty mortgage ($58,722.70), (b) was at an interest rate of 9% rather than a rate equal to or less than a 6 1/4%, and (c) had a maturity date in 1983 rather than April 7, 1973. Moreover, the lessor agreed to and did in fact execute the new mortgage, in which the lessor's interest in the lease was assigned as security. Under the facts, the August, 1973 mortgage financing was not a refinancing within the terms of the lease, and the lease therefore did not oblige TraveLodge to make payments on the August, 1973 mortgage debt. This Court concludes that none of the defendants breached any contractual obligation owed to the Whighams relative to the payment or financing of the August, 1973 mortgage, and therefore the plaintiff has no contractual basis for the relief he demands.
"III. Plaintiff's Theory of Suretyship
"Plaintiff has urged as an alternate theory of recovery that either the estate of Bessie Whigham, by suffering the foreclosure and sale of its property, or Plaintiff James Whigham, by paying the mortgage indebtedness to City Federal, paid a debt owed by the defendants, and therefore the defendants are liable to the estate of Bessie Whigham or to James Whigham on a suretyship basis. This theory is not supported by either the facts or the law.
"Throughout this case the plaintiff has sought to treat the estate of Bessie Whigham as a legal entity wholly separate and apart from James Whigham and to persuade this Court that the actions of James Whigham after the death of Bessie Whigham should not be attributed to the estate. This Court finds that such a separation of interests and actions cannot be made as a matter of fact and of law. On March 4, *Page 1083 
1975, Bessie Whigham died, naming in her will her husband James Whigham as her sole devisee and legatee and as the executor of her estate. Under well-established principles of Alabama law, the title Bessie Whigham held to interests in the mortgaged property vested in her sole devisee, James Whigham, on March 4, 1975. `On the death of a testatrix the title to and right to possession of land devised vests as of that date subject to certain statutory rights and duties of the executor, though the will is, of course, not probated until a later date.' Whortonv. Snell, 226 Ala. 525, 526, 147 So. 602, 603 (1933); accord,Glasgow v. Blackwell, 285 Ala. 204, 207, 231 So.2d 80, 82
(1970); Whorton v. Moragne, 62 Ala. 201, 207-08 (1878); Hall'sHeirs v. Hall, 47 Ala. 290, 297 (1872). James Whigham therefore acquired the mortgagor's interest of Bessie Whigham in the August, 1973 mortgage. When James Whigham purchased the mortgage from City Federal Savings and Loan Association, he acquired the mortgagee's interest in the August, 1973 mortgage as an assignee of the original mortgagee. By the doctrine of merger, when a mortgagor acquires the note and mortgage from the mortgagee, the debt, and mortgage are extinguished. Barnett Jackson v. McMillan, 176 Ala. 430, 58 So. 440 (1912). James Whigham's interest as a mortgagor merged with his interest as a mortgagee and with respect to the mortgagor's interest acquired from Bessie Whigham the mortgage was extinguished.
"No legal or actual distinction ever existed between the interests of James Whigham individually and the interests of James Whigham as the executor and sole beneficiary of the estate of Bessie Whigham. Accordingly, all of the acts and interests of James Whigham after March 4, 1975 — the purchase of the debt from City Federal, the institution of foreclosure proceedings, the purchase of the foreclosed interest at the sale — are to be considered the acts and interests of the estate of Bessie Whigham as well. Thus narrowed, the considerations ostensibly before the Court are whether James Whigham became a surety by his purchase of the indebtedness from City Federal and, if so, what rights he thereby obtained with respect to the defendants. Rather than belabor the former question, the Court will assume that James Whigham enjoyed the status of a surety, since it is clear that his rights were the same whether or not he is accorded surety status. Title 9, section 78 of the Code of Alabama provides:
"`A surety who has paid his principal's debt is entitled to a transfer of the original and collateral security which the creditor holds; he has all the rights to realize thereon and toreimburse himself to the same extent as the creditor might havedone before the surety paid him, whether paid before or after judgment or decree. He shall be substituted for the creditorand subrogated to all his rights and remedies; in effect, heshall be a purchaser of the debt and all its incidents.'
(emphasis supplied.)
As a surety, then James Whigham would enjoy the identical rights he possessed as assignee of the mortgage and mortgage debt.
"As assignee of the mortgage and mortgage debt, James Whigham had available two mutually exclusive remedies against the defendants. He could sue the joint venture as maker and TraveLodge as guarantor on the note and recover the sums owing or he could foreclose on the property secured by the mortgage and satisfy the debt in the foreclosure sale. Although his original complaint included what appeared to be a demand for relief under the former remedy, James Whigham subsequently elected the latter remedy and purchased for himself at the sale; in so doing he foreclosed any further claim against the defendants on the indebtedness:
"`[W]here a mortgagee or assignee of mortgage on land purchases the premises on foreclosure for a sum equal to the mortgage note or debt and lawful expenses and charges secured thereby, this action operates as an extinguishment of the notes secured by the mortgage, and the mortgagee or assignee of the mortgage cannot thereafter maintain an action on the note or debt.' *Page 1084 Oden v. King, 216 Ala. 504, 508-9, 113 So. 609, 612, (1927); see Osborne, Handbook on the Law of Mortgages § 333, at 698-99 (2d ed. 1970). Whether considered as surety or assignee of the debt and mortgage, James Whigham elected a remedy for the defendants' indebtedness which preempts his present demand. The plaintiff is entitled to only one satisfaction of the debt, and he has already received it.
"The final observation that the Court must make with regard to the plaintiff's demands for relief is that, holding aside the invalidity of his legal theories, the plaintiff has failed to establish that he suffered any injury by the acts or omissions of the defendants. Rather, the evidence shows that the circumstances plaintiff complains of are circumstances he intentionally and advisedly brought about himself and from which he has substantially benefitted. The plaintiff now holds title to the motel premises in fee, unencumbered by lessor mortgages. It is clear from the evidence that the securing of such title was the plaintiff's objective from the time he acquired the note and mortgage from City Federal. As suggested above, the plaintiff could have recovered against the defendants by suing on the note. Such a recovery would have reimbursed the plaintiff for the money he expended to purchase the note and mortgage and would have entirely freed the motel property from mortgages; however, the property would have remained subject to TraveLodge's leasehold interest for an additional thirty-six years at a fixed rental. The undisputed testimony at trial demonstrated the substantial value that the right to possess and operate the motel for the remaining leasehold period had. The testimony of Gene Dilmore, the expert appraiser that City Federal hired in 1973 to value the motel, was to the effect that, based on projected earnings, he had placed a value of approximately $345,000 on TraveLodge's leasehold interest in August, 1973, and that its value as of May, 1975, the time of foreclosure, would have been in excess of $344,000. Moreover, defendant Loyd Baker testified that the joint venturers had invested at least $317,000 in the motel facility itself since 1963. While the plaintiff has at various points contended that the foreclosure was necessary to protect the plaintiff's interests in the property, there was in fact no danger to the plaintiff's interests after he had purchased the note and mortgage. His interests in the property could not have been lost by foreclosure since he was then the mortgagee; his investment in the purchase of the note and mortgage could be recouped in a suit on the note. The record clearly shows that self-interest rather than the compulsion of circumstance prompted the foreclosure. As plaintiff James Whigham himself testified at trial, he foreclosed the mortgage `to get rid of the Bakers and Travelodge,' and the foreclosure had precisely that effect. Because the lessor's and lessee's interests were pledged as security for the August, 1973, mortgage, the lease was an interest subject to the mortgage and the very act of foreclosure operated to destroy it. See, e.g., First NationalBank v. Welch, 222 Ala. 144, 132 So. 44 (1930). Moreover, even if the lease had survived the foreclosure, both the lessor's and lessee's interests would have vested in the plaintiff as purchaser at the foreclosure sale, and accordingly the lease would have been destroyed under the doctrine of merger. See,McMahan v. Jacoway, 105 Ala. 585, 17 So. 39 (1894); Otis v.McMillan Sons, 70 Ala. 36 (1881); Martin, Bradley Co. v.Searcy, 3 Stew. 50, 52 (1830). Following his foreclosure and purchase on May 9, 1975, plaintiff James Whigham assumed exclusive possession of the motel facility and has operated the motel himself since that date.
"The net result is that for an investment of $190,000 plaintiff James Whigham has obtained title to physical improvements totaling in excess of $300,000 and has obtained exclusive possession of that property, in which the present right to possession alone has been valued in excess of $344,000. The plaintiff has failed to show any injury at all, much less an injury occasioned by the defendants.
"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED BY THE *Page 1085 
COURT that judgment be and the same is hereby rendered in favor of the defendants and against the plaintiff. Costs taxed to the plaintiff."
Whigham, by his statement of the issues presented for review, says the trial court committed reversible error in its findings of fact and misapplied the law to the facts. He says this is true in four particulars:
1. The evidence was undisputed that the Whighams were ill and aged, and by improper conduct upon the part of the defendants were induced to join in the August 1973 mortgage pledging the Whigham motel property together with their lease from TraveLodge, therefore, defendants are indebted to Whigham, or Mrs. Whigham's estate.
2. The evidence was undisputed that the Whigham's pledged their real property as security for the $180,000 loan to defendants; defendants did not pay the loan; defendants breached a contractual obligation to pay that loan, therefore, defendants are liable in damages for the breach.
3. That he, Whigham, as mortgagee, or assignee of same; or surety with rights of a mortgage, or assignee of same, when he purchased the motel premises on foreclosure for a sum equal to the mortgage indebtedness, plus lawful charges, secured by the mortgage it did not operate to extinguish the indebtedness and bar an action to recover it.
4. That he, Whigham, in this case is not limited to two mutually exclusive remedies, foreclosure or an action for recovery of the mortgage indebtedness, because his interest in the mortgaged property was insufficient to pay the indebtedness; in other words, there was a deficiency.
As to Whigham's first assertion of error, we must state that not only was the evidence in dispute but the substantial weight of it was against the conclusion he would draw from it. Under this state of the record we cannot disagree with the trial court's findings of fact in this regard nor can we say he misapplied the law to the facts. Rule 52 (a), ARCP. Eubanks v.Richards, 294 Ala. 30, 310 So.2d 883 (1975)
Regarding Whigham's contention that defendants breached a contractual obligation owed him, we observe there was a finding by the trial court that the August 1973 mortgage loan was not a refinancing within the purview of the terms of the lease. It follows, then, there was no contractual obligation breached when the mortgage indebtedness, secured by the August 1973 mortgage, was not paid by defendants. The evidence supports the trial court's finding and we cannot disturb it. Eubanks, supra.
Although Whigham raises on appeal, for the first time, the point made in his fourth contention it is inherent in his third contention and adequately dealt with by the trial court under the judgment heading: "Plaintiff's Theory of Suretyship." The trial court's reasoning and conclusions under that section of the judgment are sound and amply supported by the evidence and the authorities cited by the trial court. Whigham had mutually exclusive remedies under the facts in this case; and under those same facts it is clear there was no deficiency according to the evidence of the value of the real property and improvements together with the benefits accruing from termination of the lease and regaining possession of the property unencumbered either by the mortgage or lease.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, JONES and ALMON, JJ., concur. *Page 1086