EMBRY, Justice.
Appeal by American Allied Life Insurance Company from a judgment entered by the trial court granting the declaratory relief prayed for by Alvis Fielding Wales and denying American Allied’s counterclaim for reformation of an insurance policy. We affirm.
The trial court heard this action without a jury and its finding of facts is an excellent summary of the evidence, and amply supported by it:
“This cause, being at issue, came on for trial on the merits on January 13, 1977. Plaintiff seeks a declaration of entitle- *704 merit to cash loan values as provided in an insurance policy issued to plaintiff in February 1968 by Allied Life Insurance Company, a company subsequently merged with the named defendant, American Allied Life Insurance Company.
“Defendant denies plaintiff is entitled to such loan values. By counterclaim, defendant prays that the policy be reformed, asserting that the policy was issued and accepted by a mutual mistake by plaintiff and defendant, that said policy is not the policy plaintiff applied for or the policy defendant intended to issue. Alternatively, the defendant claims plaintiff should have known and realized a mistake was made when the policy was initially issued. Also, defendant contends that before the policy in question was accepted the plaintiff was possessed of such information that, in view of plaintiff’s intelligence and business experience, should have caused plaintiff at least to suspect that defendant had issued the policy by mistake and further that, regardless of plaintiff’s intentions or awareness of possible error, the public policy of Alabama prohibiting discrimination between individuals of equal age and life expectancy in the rates and benefits for life insurance requires that the policy be reformed so as to conform to the rates and benefits regularly and customarily offered by defendant to all members of the public similarly situated.
“Although plaintiff denies any awareness of error and insists that he relied on the loan values stated in the policy and the recommendation of the insurer’s agent when deciding to accept it, there is no substantial dispute in the evidence as to what transpired.
“The circumstances surrounding the issuance of this policy are most important. The plaintiff received from defendant’s predecessor’s agent two policies of insurance. One was for $10,000.00 and the other was for $25,000.00. The agent reviewed each of these policies with the plaintiff and highly recommended that the plaintiff purchase the $25,000.00 policy, which he did. It is without dispute that plaintiff and the insurer’s agent discussed loan value immediately before the purchase. On the recommendation of the agent, plaintiff purchased the policy in question. Plaintiff reluctantly did so since the annual premiums exceeded $900.00, but testified that he did so mainly on the recommendation of the agent due to the ‘loan values’ contained in the policy.
“Furthermore, the evidence is without dispute that the agent emphasized the loan value of the policy in question by circling it with a pen and advising the plaintiff that loan values would over a period of years exceed premium payments.
“The defendant insists the policy should be reformed due to a mutual mistake. It is, however, apparent that the policy in question was the policy presented and shown to plaintiff and the policy which he intended to purchase. Under such state of facts, this court cannot hold that a mutual mistake has occurred.
“This policy was issued on March 27, 1968. Only after plaintiff instituted this action for a declaration of rights, did defendant take any affirmative steps to have the policy reformed.
“The court finds that if an error was made, it was made unilaterally by defendant’s predecessor. The court then must answer the question: should the plaintiff at this late date be penalized for purchasing a policy recommended to him by the agent of defendant’s predecessor? It is the general law in Alabama that insurance contracts are to be construed most strongly against the insurer who prepares the contract. Likewise, it appears equity would also impose on an insurer an obligation to carefully inspect and review its actions in the issuance of policy contracts.
“A court of equity will not usually reform a policy of insurance in order to relieve a party from a mistake which was the result of his own negligence. It is clear from the evidence in this case that *705 if a mistake was made, it was made unilaterally as a result of the negligence of Allied Life Insurance Company.
“While defendant contends otherwise, there is no evidence of inequitable conduct or fraud on the part of the plaintiff, nor is there evidence that the plaintiff knew or suspected any mistake of the insurer.
“While the policy may in fact be, as defendant contends, more favorable to plaintiff than other policies issued to similarly situated individuals, that does not render the contract or policy void, Meridian Life Ins. Co. v. Dean, 182 Ala. 127, 62 So. 90, nor does it afford a basis for reformation.
“IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED as follows:
“1. The plaintiff is the lawful owner of insurance No. 4383 issued on March 27, 1968, by Allied Life Insurance Company.
“2. The defendant has assumed all obligations under this contract and is committed to honor its policy provisions.
“3. The plaintiff is entitled to a loan from the defendant on the said policy of insurance in accordance with the loan values as stated in said policy. The defendant is hereby ordered to make same available to the plaintiff.
“4. That the defendant’s counterclaim for reformation be denied.”
American Allied, by its statement of the issues presented for review, says the trial court erred in declaring Wales is entitled to obtain a loan in accordance with the loan values stated in the insurance policy and in denying the counterclaim for reformation. In brief, to support the contention that the trial court committed reversible error in its ruling on the counterclaim, American Allied asserts:
“A. Reformation is due to be granted on grounds of mutual mistake.
* * * * $ *
“B. Reformation is due to be granted because Mr. Wales’ own testimony shows he accepted the policy with the knowledge amounting to an awareness that a mistake had been made.
* * * * * *
“C. Reformation is due to be granted on grounds of public policy and to prevent discrimination.”
As to American Allied’s first assertion, we observe there was a finding by the trial court that a mutual mistake did not occur. The trial court went further and added, even if a mistake did occur, it was made unilaterally by American Allied’s predecessor. Under the state of the record we cannot disagree with the trial court’s finding of fact in this regard, for it is supported by the evidence. Eubanks v. Richards, 294 Ala. 30, 310 So.2d 883 (1975); Whigham v. Travelodge International, Inc., 349 So.2d 1078 (Ala.1977).
The gist of American Allied’s second argument is that Wales, being a successful businessman and after his admitted examination of the loan values under the policy when it was delivered to him, knew or should have known a mistake had been made. The trial court specifically found the evidence did not support American Allied’s claim. Again, the evidence supports the trial court’s finding and we cannot disturb it. Eubanks, supra; Whigham, supra.
American Allied’s third contention was adequately dealt with by the trial court in the judgment. The trial court’s reasoning and conclusion are sound and supported by the authority cited therein.
There was ample evidence to support the findings of the trial court, and the conclusion and holding based upon those findings are correct under applicable law; therefore, the judgment is due to be, and is affirmed.
AFFIRMED.
TORBERT, C. J., and BLOODWORTH, FAULKNER and ALMON, JJ., concur.