THOMAS, Judge.
James Clayton (“James”), the son of Es-tellene Clayton (“Ms. Clayton”), appeals from the trial court’s judgment holding that Camden Clayton (“Camden”), James’s son, is entitled to one-half of the royalties from a sublease of the mining rights in property that James had leased from Ms. Clayton (“the property”). James had leased the property from Ms. Clayton before he and Camden inherited the property as joint tenants from Ms. Clayton.

Facts and Procedural History

Before her death on July 28, 2009, Ms. Clayton was the sole owner of a 182-acre piece of land. In October 1999, Ms. Clayton leased the property, which comprises approximately 103 acres of the 182-acre tract, to James. The lease was for a 10-year term with the option to renew the lease for another 10-year term, which James exercised before Ms. Clayton’s death. On December 10,1999, James subleased the mining rights to Blount Springs Sand & Gravel Co., Inc. (“Blount Springs”), “for the purpose of exploring for, mining, taking out, and removing therefrom the merchantable limestone and sandstone”; Ms. Clayton was not a party to the sublease and was not entitled to the royalties resulting therefrom. The sub *651 lease required Blount Springs to pay James $10,000 per year. The sublease also required Blount Springs to pay James royalties in the amount of 20 cents per ton for marketable and/or saleable limestone and sandstone (hereinafter referred to as the “tonnage royalty” or “tonnage royalties”); the $10,000 payment was credited to the tonnage royalty owed to James. The sublease was for a 20-year term.
Ms. Clayton died testate on July 28, 2009. James’s lease was still operative at the time of Ms. Clayton’s death. Ms. Clayton’s will named James as personal representative of her estate and devised the 182-acre tract, including the property to James and Camden as joint tenants with the right of survivorship. James filed a petition to probate Ms. Clayton’s will in the Etowah County Probate Court on August 4, 2009. On September 9, 2009, Camden filed a petition to remove the proceedings to the Etowah Circuit Court (“the trial court”); the trial court granted Camden’s petition and entered an order of removal on September 15, 2009.
On October 2, 2009, Camden filed a petition alleging that James had collected tonnage royalties from Goodhope Contracting, Inc. (“Goodhope”),[1] and that James had not given Camden the one-half interest in the tonnage royalties to which Camden alleged he was entitled as a joint tenant of the property. Camden requested that the trial court order Goodhope to pay all future tonnage royalties to the clerk of the trial court to be held pending a final decision as to James’s and Camden’s rights to the tonnage royalties. The trial court granted Camden’s petition on November 10, 2009.
On December 23, 2009, Camden filed a contempt motion against James, alleging that “at least two rental payments have occurred since the entry of the [November 10, 2009,] order and neither have been paid into the court by [James].” Camden further alleged that James had attempted to oust Camden and that James had committed, and would continue to commit, waste on the property. On January 14, 2010, the trial court again ordered that Goodhope pay all tonnage royalties to the clerk of the trial court. The trial court also set the matter for a hearing to occur on February 2, 2010.
On January 29, 2010, Camden filed a motion to amend the January 14, 2010, order of the trial court, requesting that the order require Blount Springs, the company that James had entered into the sublease with, rather than Goodhope, to pay the tonnage royalties to the clerk of the trial court. The trial court granted Camden’s motion on February 1, 2010.
On February 10, 2010, James filed a “motion to set aside order for payment of royalties.” The trial court set James’s motion and all related issues for a hearing to occur on March 1, 2010.
On March 29, 2010, following a nonjury trial, the trial court entered an order in favor of Camden, stating in pertinent part:
“2. That all royalty payments from Blount Springs Sand & Gravel, paid or payable since the death of [Ms.] Clayton, belong equally to Petitioner, Camden *652 Clayton, and Respondent, [James] Clayton. Since the death of [Ms.] Clayton, royalties have been paid in the amount of $89,860.00. Petitioner Camden Clayton is entitled to one-half (½) of said royalties in the sum of $19,980,00. There is currently held by the Clerk of this Court, pursuant to prior Orders of this Court, the sum of $23,751.89. It is ordered that the Clerk shall pay to Camden Clayton the sum of $19,930,00 and pay to [James] Clayton the sum of $3,821.89.
“3. All future royalty payments from Blount Springs Sand & Gravel commencing with all payments due on or after April 1, 2010, shall be divided such that one-half (½) of royalties shall be payable to Camden Clayton ... and one-half (½) to [James] Clayton-”
On April 27, 2010, James filed a motion to alter, amend, or vacate the trial court’s March 29, 2010, order. The trial court denied James’s motion on May 10, 2010. On June 9, 2010, James filed a motion requesting that the trial court set aside its May 10, 2010, order denying James’s motion to alter, amend, or vacate the March 29, 2010, order. Camden filed a motion to strike James’s motion to set aside the May 10, 2010, order, which the trial court granted on June 15, 2010. Also on June 15, 2010, the parties filed a “joint motion to certify [the trial court’s] May 10, 2010, order” as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P. The trial court granted the parties’ joint motion, and James appealed to our supreme court. Our supreme court transferred the appeal to this court on August 5, 2010, pursuant to § 12-2-7(6), Ala. Code 1975.

Standard of Review

This court set forth the well established standard by which we review trial court judgments based on ore tenus evidence in Farmers Insurance Co. v. Price-Williams Associates, Inc., 873 So.2d 252 (Ala.Civ.App.2003):
“ ‘When ore tenus evidence is presented, a presumption of correctness exists as to the trial court’s findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. J & M Bail Bonding Co. v. Hayes, 748 So.2d 198 (Ala.1999); Gaston v. Ames, 514 So.2d 877 (Ala.1987). When the trial court in a nonjury case enters a judgment without making specific findings of fact, the appellate court “will assume that the trial judge made those findings necessary to support the judgment.” Transamerica Commercial Fin. Corp. v. AmSouth Bank, 608 So.2d 375, 378 (Ala.1992). Moreover, “[u]nder the ore tenus rule, the trial court’s judgment and all implicit findings necessary to support it carry a presumption of correctness.” Transamerica, 608 So.2d at 378. However, when the trial court improperly applies the law to [the] facts, no presumption of correctness exists as to the trial court’s judgment. Allstate Ins. Co. v. Skelton, 675 So.2d 377 (Ala.1996); Marvin’s, Inc. v. Robertson, 608 So.2d 391 (Ala.1992); Gaston, 514 So.2d at 878; Smith v. Style Advertising, Inc., 470 So.2d 1194 (Ala.1985); League v. McDonald, 355 So.2d 695 (Ala.1978). “Questions of law are not subject to the ore tenus standard of review.” Reed v. Board of Trustees for Alabama State Univ., 778 So.2d 791, 793 n. 2 (Ala.2000). A trial court’s conclusions on legal issues carry no presumption of correctness on appeal. Ex parte Cash, 624 So.2d 576, 577 (Ala.1993). This court reviews the application of law to facts de novo. Allstate, 675 So.2d at 379 (“[W]here the facts before the trial court are essential *653 ly undisputed and the controversy involves questions of law for the court to consider, the [trial] court’s judgment carries no presumption of correctness.”).’ ”
873 So.2d at 254-55 (quoting City of Prattville v. Post, 831 So.2d 622, 627-28 (Ala.Civ.App.2002)).

Discussion

Initially, we note that the trial court did not set forth specific findings of fact upon which it based its judgment that the tonnage royalties were to be split evenly between James and Camden. However, as noted earlier, “it is well settled that where the trial court does not make specific factual findings, this court will assume that the trial court made such findings as would support its judgment.” Berryhill v. Reeves, 705 So.2d 505, 507 (Ala.Civ.App.1997) (citing Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala.1992)).
James argues on appeal that he lawfully leased the property from Ms. Clayton before her death, that he lawfully sublet the mining rights to the property to Blount Springs, and, thus, that he is the “sole legal recipient” of the tonnage royalties generated from the property. James further argues that Ms. Clayton’s interest in the property did not include an interest in the tonnage royalties from the sublease and, thus, that Camden’s interest in the property likewise does not include an interest in the tonnage royalties. Relying on Kelly v. Kelly, 250 Ala. 664, 35 So.2d 686 (1948), and Kellum v. Balkum, 93 Ala. 317, 9 So. 463 (1891), James argues that Ms. Clayton’s death did not terminate his lease; rather, he argues, upon Ms. Clayton’s death, he and Camden were substituted as the “ ‘landlords of their ancestor’s tenants....’”
 The present case is distinguishable from Kelly and Kellum. In the present case, unlike in Kelly and Kellum, James, the lessee, inherited from Ms. Clayton, the lessor, the property as a joint tenant with the right of survivorship. Under Alabama law, our supreme court has held that “[i]n a joint tenancy each tenant is seized of some equal share while at the same time each owns the whole.” Porter v. Porter, 472 So.2d 630, 634 (Ala.1985) (citing Nunn v. Keith, 289 Ala. 518, 268 So.2d 792 (1972)). Therefore, Ms. Clayton’s reversionary interest in the fee and James’s tenancy interest vested in James when he and Camden inherited the property from Ms. Clayton as joint tenants. Accordingly, James’s lease was destroyed under the doctrine of merger. See Whigham v. Travelodge Int’l, Inc., 349 So.2d 1078, 1085 (Ala.1977) (citing McMahan v. Jacoway, 105 Ala. 585, 17 So. 39 (1894); Otis v. McMillan & Sons, 70 Ala. 46 (1881); and Martin, Bradley & Co. v. Searcy, 3 Stew. 50, 52 (1830)); see also Welsh v. Phillips, 54 Ala. 309, 316 (1875) (“The general rule of law is, that when a greater and less, or a legal and equitable estate, meet and coincide in the same person, they are merged, the one drowned in the other.”). Holding otherwise would result in the absurdity our supreme court warned against in Otis, 70 Ala. at 59: “There can be no greater absurdity, than to place [a man] in the relation of being his own landlord, and his own tenant, at one and the same time; bound himself to pay, and to receive rent.” Our conclusion that James’s lease terminated at the moment James and Camden inherited the property from Ms. Clayton as joint tenants negates James’s further arguments.
The dissent asserts that, “[i]n this case, the same persons have never held and do not hold both the freehold interest and the leasehold interest in the property at issue” because James and Camden inherited the *654 property from Ms. Clayton as joint tenants. 75 So.3d at 657. The dissent further asserts that “Alabama law should recognize that a merger of estates does not occur when a lone tenant under a lease acquires ownership of the freehold estate as a joint tenant with another.” 75 So.3d 658. However, in order to reach the dissent’s conclusion this court would have to ignore the long-held principle noted above that “[i]n a joint tenancy each tenant is seized of some equal share while at the same time each owns the whole.” Porter, 472 So.2d at 634. Under Alabama law, James is considered to own an undivided interest in the whole property; thus, the merger doctrine applies to terminate James’s lease.
In reaching the conclusion that it does, the dissent relies upon a case from the Supreme Court of New Mexico, Tri-Bullion Corp. v. American Smelting & Refining Co., 58 N.M. 787, 277 P.2d 293 (1954). The dissent asserts that in Tri-Bullion “the New Mexico Supreme Court denied application of the merger doctrine in circumstances almost identical to those at issue in this case.” 75 So.3d at 658. Though “almost identical,” the facts in Tri-Bullion present a significant distinction from the present case. In Tri-Bul-lion, American Smelting, a corporation that held a lease allowing it to mine certain real property, later acquired fee-simple ownership of the same real property as tenant in common with Tri-Bullion. 58 N.M. at 792, 277 P.2d at 296. In the present case, James and Camden acquired fee-simple ownership of the property as joint tenants with the right of survivorship.
Alabama law has long recognized a distinction between joint tenants and tenants in common. Under Alabama law, joint tenants share the unities of interest, title, and possession. See Nunn v. Keith, 289 Ala. 518, 524, 268 So.2d 792, 797 (1972) (noting that the unity of time, though a requirement at common law to create a joint tenancy, is not required under Alabama law in order to create a joint tenancy); see also 48A C.J.S. Joint Tenancy § & (2004) (“[I]n ... a joint tenancy ... each of the owners must have one and the same interest; conveyed by the same act or instrument; ... and each must have the entire possession of every parcel of the property held in joint tenancy as well as of the whole.” (footnotes omitted)). Conversely, tenants in common share only the unity of possession. Porter, 472 So.2d at 633 (citing Van Meter v. Grice, 380 So.2d 274 (Ala.1980)) (“[A] tenancy in common requires only one unity, that of possession.”). Further, tenants in common are not considered to own the entirety of the parcel, as in a joint tenancy; rather, each tenant in common owns an undivided part of the parcel. Kellum v. Williams, 252 Ala. 71, 72, 39 So.2d 573, 574 (1949) (“A tenancy in common may be defined as that character of tenancy where two or more persons are entitled to property in such manner that, while there are several freeholds, the possession is not divided but is a single unity....”); see also 86 C.J.S. Tenancy in Common § 3 (2006). Therefore, our conclusion that the merger doctrine applies to terminate the lease between Ms. Clayton and James is consistent with Alabama law.[2]
The dissent also asserts that, “even if the joint tenancy with a right of survivor-ship somehow could be viewed as a unification of the freehold estate and the *655 leasehold estate in the same person, the doctrine of merger would not apply” based on the rules of equity. 75 So.3d 659. However, as the dissent notes, James did not raise this argument to the trial court and does not raise it on appeal. Thus, we will not reverse the trial court’s judgment based on an argument not presented for its consideration. See Ex parte Wiginton, 743 So.2d 1071, 1072-73 (Ala.1999) (“The appellate courts will sustain the decision of the trial court if it is right for any reason, even one not presented by a party or considered or cited by the trial judge, Morrison v. Franklin, 655 So.2d 964 (Ala.1995), even though the appellate courts will not reverse the trial court on an issue or contention not presented to the trial court for its consideration in making its ruling, Smith v. Equifax Services, Inc., 537 So.2d 463 (Ala.1988)
James’s argument that Camden’s interest in the property is limited to the interest that Ms. Clayton held is correct. However, James’s conclusion that because Ms. Clayton was not entitled to the tonnage royalties likewise bars Camden from the tonnage royalties does not follow. Rather, James and Camden inherited the property as joint tenants. “In a joint tenancy each tenant is seized of some equal share while at the same time each owns the whole.” Porter, 472 So.2d at 634 (citing Nunn, supra). James’s relationship with Ms. Clayton was that of lessor-lessee. However, James’s relationship with Camden is that of joint tenants, which “have a common right to possess and enjoy the property.” Porter, 472 So.2d at 633. Further, our supreme court has held that
“ ‘... [i]t has become a settled rule in this country that a cotenant who has received money from third persons for the use of the common property becomes a trustee for the amount collected for the benefit of his cotenants.... ’ 14 Am.Jur. pp. 99, 100. For money so received, he must account. Henderson v. Stinson, 207 Ala. 365, 92 So. 453 [ (1922) ], 27 A.L.R. page 188.”
Faust v. Faust, 251 Ala. 35, 37, 36 So.2d 232, 233 (1948). Therefore, we affirm the trial court’s judgment that James and Camden are entitled to an equal share of the tonnage royalties.
James also argues that Camden produced no evidence indicating that James had committed waste. However, based on our previous holding, we need not address this argument. See Favorite Market Store v. Waldrop, 924 So.2d 719, 723 (Ala.Civ.App.2005) (stating that this court would pretermit discussion of further issues in light of dispositive nature of another issue).

Conclusion

Based on the foregoing, we affirm the trial court’s judgment.
AFFIRMED.
PITTMAN, J., concurs.
THOMPSON, P. J., concurs in the result, without writing.
MOORE, J., dissents, with writing, which BRYAN, J., joins.

. In his petition, Camden improperly named Goodhope as the mining company to whom James had sublet the mining rights to property; the error was later corrected, and Blount Springs was properly named as the mining company, as explained infra.

. We also recognize the dissent’s reliance upon Sisson v. Swift, 243 Ala. 289, 9 So.2d 891 (1942), and, although we question the applicability of a trust-law case to the situation presented in this case, we note that our conclusion is consistent with the proposition in Sisson upon which the dissent relies.