(327 P.3d 1036)
No. 110,309

In the Matter of the Protest of BARKER, ROBERT E. and R. GAY
for the Year 2011 in Neosho County, Kansas.

Opinion filed June 6, 2014.

*Robert E. Barker* and *R. Gay Barker*, appellants pro se.

*Eric W. Barth*, of Hinkle Law Firm LLC, of Wichita, for appellee.

Before BRUNS, P.J., PIERRON and STANDRIDGE, JJ.

BRUNS, P.: Robert E. and R. Gay Barker (Barkers) appeal from the decision of the Court of Tax Appeals (COTA) entering summary judgment against them and in favor of Neosho County (County) on the Barkers' 2011 tax protest appeal. Robert Barker leased an oil and gas interest on land owned by his parents in 1983, and his parents retained a ⅜th royalty interest from the oil and gas that Robert produced. When Robert's mother died in 2009, the land passed to the Barkers as joint tenants by a transfer on death deed. However, the County continued to impose separate taxes on the royalty interest and working interest. The Barkers protested the County's tax valuation for 2011, and COTA affirmed the County's decision, finding that the lease and royalty interests remained in existence because the lease was Robert Barker's individually while the royalty was the Barkers' as joint tenants.

The Barkers argue that COTA erred in holding that the doctrine of merger did not work to combine their interests in the property after Estelle Barker's death. We hold that the oil and gas lease executed in 1983 no longer served a purpose and was terminated by operation of law upon the death of Robert's mother in 2009. Because of this finding, we do not need to reach the merits of the Barkers' second issue. We, therefore, reverse COTA's decision and remand for entry of summary judgment in favor of the Barkers.

## FACTS

The relevant facts are undisputed. In 1983, Gordon and Estelle Barker granted an oil and gas lease to their son, Robert Barker, on a piece of land they owned in Neosho County. Gordon and Estelle

Barker reserved a ³⁄₁₆th royalty interest in the gross proceeds from the lease. Gordon Barker predeceased Estelle Barker, who passed away on January 6, 2009. At that time, the Barkers, as joint tenants, received Estelle Barker's ownership in the property at issue through a transfer on death deed.

In December 2011, Robert Barker paid the 2011 taxes on both the working interest and royalty interest under protest, raising two arguments: (1) that the value should have followed a decline rate established in a prior year, and (2) that there was, in fact, no royalty interest. As part of the documents in support of protest, the Barkers attached a 2010 royalty interest tax statement, which the County had mailed to Estelle Barker. The County Appraiser (Appraiser) held a hearing on April 4, 2012. According to the Appraiser's notes, the Appraiser and Robert Barker settled on the decline issue after their discussions. The Appraiser, however, did not "feel qualified to make the decision to remove the 'royalty' portion of [Robert Barker's] tax bill and felt that this needed to be a COTA decision since [the Appraiser] couldn't find any precedents allowing the valuation of a lease with only a 'working' interest value."

The Barkers filed a protest appeal with COTA. Eventually, the Barkers filed a motion for summary judgment and a memorandum in support of their motion in which the Barkers argued that the interest Robert owned prior to Estelle's death merged with the interest the Barkers obtained upon her death and should be taxed as such. After the County filed its response and the Barkers filed a reply, the parties entered into a stipulation of facts in which they agreed on tax values if the property was classified as a ³⁄₁₆th royalty interest and ¹³⁄₁₆th working interest or a 100% working interest.

On June 17, 2013, COTA entered its order denying the Barkers' motion for summary judgment and entering judgment in favor of the County. Subsequently, the Barkers filed a petition for reconsideration, which COTA denied. Thereafter, the Barkers timely filed a petition for judicial review with this court.

ANALYSIS

*Issue Presented*

On appeal, the Barkers contend that COTA erred by failing to apply the doctrine of merger in this action. Specifically, the Barkers contend that an oil and gas lease executed by Robert and his parents in 1983 was terminated in 2009 when the Barkers became the owners—as joint tenants—of the land that was burdened by the leasehold. We also note that COTA entered judgment as a matter of law on behalf of the County even though only the Barkers moved for summary judgment. Although we question this procedure, the Barkers have not raised the issue on appeal. Hence, we will not address it in this opinion.

*Standard of Review*

The Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.*, controls our review of COTA's decision. Under the KJRA, the burden of proving the invalidity of COTA's action rests on the party asserting invalidity. K.S.A. 2013 Supp. 77-621(a)(1). Although judicial review is limited by the KJRA, COTA determined that the facts were undisputed and that the issue presented only a matter of law. Accordingly, our review of COTA's decision is unlimited. See K.S.A. 2013 Supp. 77-621(c)(4); *In re Tax Appeal of LaFarge Midwest*, 293 Kan. 1039, 1043, 271 P.3d 732 (2012); *In re Tax Appeals of EOG Resources, Inc.*, 46 Kan. App. 2d 821, 825, 265 P.3d 1207 (2011), *rev. denied* 296 Kan. 1130 (2013).

*Nature of Oil and Gas Lease*

In Kansas, "an oil and gas lease conveys a license to explore, or a ' "profit prendre." ' " *Farrar v. Mobil Oil Corp.*, 43 Kan. App. 2d 871, 883, 234 P.3d 19 (citing *State, ex rel., v. Board of Regents*, 176 Kan. 179, 190, 269 P.2d 425 [1954]), *rev. denied* 291 Kan. 910 (2010); see also Restatement (Third) of Property: Servitudes § 1.2 (1998). Like other easements, a profit a prendre—often simply referred to as a "profit"—is an incorporeal hereditament or an intangible right in the land. See *Utica Nat'l Bank & Trust Co. v. Marney*, 233 Kan. 432, 433-34, 661 P.2d 1246 (1983). While easements generally allow one *to go* onto land owned by another per-

son, a profit allows one not only to go onto the land of another but also *to take* some product from the land. See *Burden v. Gypsy Oil Co.*, 141 Kan. 147, 150, 40 P.2d 463 (1935) ("A profit a prendre is the right to take soil, gravel, minerals and the like from the lands of another . . . .").

Specifically, an oil and gas lease "conveys a license to enter upon the land [owned by another] and explore for such minerals and if they are discovered to produce and sever them." *Ingram v. Ingram*, 214 Kan. 415, 418, 521 P.2d 254 (1974). In Kansas, oil and gas leasehold "interests constitute personal property except in those specific instances when that classification is changed by statute for a specific purpose." *Utica Nat'l Bank & Trust Co.*, 233 Kan. at 435. "For the purposes of valuation and taxation in Kansas, all oil and gas leases and wells are considered personal property. K.S.A. 79-329." *Helmerich & Payne, Inc. v. Board of Seward County Comm'rs*, 34 Kan. App. 2d 53, 55, 115 P.3d 149, *rev. denied* 280 Kan. 982 (2005); see *In re Tax Appeals of EOG Resources, Inc.*, 46 Kan. App. 2d at 825.

## The Doctrine of Merger

The Kansas cases cited by COTA and the parties regarding merger are not particularly helpful. While they stand for the general proposition that where a greater and lesser estate coincide, the lesser estate merges into the greater estate, the cases deal with real estate rather than easements or profits. Under the facts of this case, we find the Restatement of Property—which both the Kansas Supreme Court and this court have turned to for guidance on multiple occasions—to be more instructive. See *Hamel v. Hamel*, 296 Kan. 1060, 1068, 1075, 299 P.3d 278 (2013) (citing both the Second and Third Restatements of Property); *Rucker v. DeLay*, 295 Kan. 826, 831, 289 P.3d 1166 (2012) (citing Restatement [Third] of Property); *U.S. Bank NA v. McConnell*, 48 Kan. App. 2d 892, 901, 305 P.3d 1 (citing Restatement [Third] of Property), *rev. denied* 298 Kan. 1208 (2013). Likewise, in *City of Arkansas City v. Bruton*, 284 Kan. 815, 831, 166 P.3d 992 (2007), our Supreme Court expressly recognized that the Restatement (Third) of Property addresses the law of servitudes..

A servitude includes both an easement and a profit. Restatement (Third) of Property: Servitudes § 1.1. Actually, a profit is simply an easement that grants a person additional rights—the right "to take" from the land. As the official comment to the Restatement (Third) of Property explains: "Profits are easements (rights to enter and use land in the possession of another) plus the right to remove something from the land. . . . Generally, the rules governing creation, interpretation, transfer, and termination of easements and profits are the same in American law." Restatement (Third) of Property: Servitudes § 1.2, comment e.

Although a servitude may be terminated by agreement of the parties, it also may be terminated by operation of law. Restatement (Third) of Property: Servitudes § 7.1 (1998). Restatement (Third) of Property: Servitudes § 7.5 specifically provides that "[a] servitude is terminated when all the benefits and burdens come into a *single ownership.*" (Emphasis added.) As the reporter's note to Restatement (Third) of Property: Servitudes § 7.5 states: "The rule stated in this section is generally accepted and is similar to that stated in the Restatement [(First)] of Property §§ 497-499 and § 555." See Restatement (First) of Property § 497 (1944) ("An easement appurtenant is extinguished by unity of ownership of estates in the dominant and servient tenements . . . .").

The official comment to the Restatement (Third) of Property explains:

"A servitude benefit is the right to use the land of another or the right to receive the performance of an obligation on the part of another. A servitude burden is an obligation not to interfere with another's use of the burdened party's land . . . . *When the burdens and benefits are united in a single person, or group of persons, the servitude ceases to serve any function. Because no one else has an interest in enforcing the servitude, the servitude terminates. The previously burdened property is freed of the servitude.*" (Emphasis added.) Restatement (Third) of Property: Servitudes § 7.5, comment a.

In other words, when the burdens and benefits are united through common ownership in either a single person or a group of persons, an easement or profit ceases to have any function. This is because as a general rule a landowner does not need a license or permission to use his or her own property. See *Van Sandt v.*

*Royster*, 148 Kan. 495, 499, 83 P.2d 698 (1938) (stating that a landowner cannot have an easement in his own land). Accordingly, in such instances, an easement or profit terminates by operation of law.

We find the legal principle set forth in Restatement (Third) of Property: Servitudes § 7.5 to be consistent with Kansas law. In *Johnston v. City of Kingman*, 141 Kan. 131, Syl., 39 P.2d 924 (1935), our Supreme Court held that "no man can acquire an easement in his own lands." See also *Ferguson v. Ferguson*, 106 Kan. 823, 825, 189 P. 925 (1920) ("[A]ll the uses which an easement might supply were then embraced in [a] general proprietorship."). A few years later, in *Van Sandt*, 148 Kan. at 499, it was held that "[a]s an easement is an interest which a person has in land in the possession of another, it necessarily follows that *an owner cannot have an easement in his own land.*" (Emphasis added.) See *Chinn v. Strait*, 173 Kan. 625, 631, 250 P.2d 806 (1952).

More recently, in *Dameron v. Kelsay*, No. 96,462, 2007 WL 2580598, at *7-8 (Kan. App. 2007) (unpublished opinion), this court held that a person who jointly owned land could not acquire an easement in her own property. Likewise, in *Stroda v. Joice Holdings*, 288 Kan. 718, 719, 207 P.3d 223 (2009), our Supreme Court noted a district court's ruling that an easement was extinguished by the doctrine of merger. Thus, we conclude that the doctrine of merger is applicable to oil and gas leases just as it is to other servitudes, including easements or profits.

## Application of the Doctrine of Merger

We now turn to the question of whether the doctrine of merger should have been applied in the present case. COTA found that there was no evidence that a properly recorded instrument terminated either interest. Certainly, the Barkers—as joint tenants—could have simply executed and filed a document terminating the oil and gas lease by agreement after Robert's mother died. See Restatement (Third) of Property: Servitudes § 7.1. Perhaps they have now done so, which would eliminate the potential of this issue being raised again in the future. But at the time this action was pending before COTA, it appears that no such instrument had

been recorded. Accordingly, we must determine whether the oil and gas lease terminated by operation of law.

It is important to recognize that joint tenancy requires four unities—interest, title, time, and possession. *Simonich, Executrix v. Wilt*, 197 Kan. 417, 421, 417 P.2d 139 (1966). Here, the County agrees that Robert and Gay are the joint tenants of the subject property. As such, it is undisputed that all four unities are present—Robert and Gay each share the same ownership interest in the property, they each took title to the property under the "Transfer on Death Deed" executed by Robert's mother in 2002, their interest commenced upon the death of Robert's mother in 2009, and they both are in possession of the whole estate. Thus, by definition there is a joint tenancy with a unity in the ownership of the entire property.

It is undisputed that Robert and Gay Barker jointly became the owners of the property that is the subject of the oil and gas lease upon the death of Robert's mother in 2009. As joint tenants, Robert and Gay do not have divided or fractional interests in the property. Rather, it is well settled that each of the joint tenants owns " *'the whole and every part,* with the benefit of survivorship, unless the tenancy be severed.' " (Emphasis added.) *Simons v. McLain*, 51 Kan. 153, 159, 32 P. 919 (1893); see also Restatement (Second) of Property: Donative Transfers § 30.1, comment q (1987) ("each joint tenant . . . was seised of the whole"); Restatement (First) of Property § 29, comment e (1936) ("each joint tenant was historically regarded as having an estate in fee simple absolute in all the land in which the joint tenancy exists"). In the present case, there *is* no allegation that the joint tenancy has been severed.

In *Dameron*, 2007 WL 2580598, at *7, this court recognized the continued viability of the rule set forth in *Simons*. Specifically, our court found that "every joint tenant owns *an undivided whole* of the jointly owned property and the joint tenant does not own a share or a fractional part of jointly owned property. *Joint means oneness and* [the joint tenants] *constitute one person . . . .*" (Emphasis added.) As joint tenants, Robert and Gay constitute one person. Because Robert owns the whole and every part of the land, he does not need a license to enter his own property to explore,

discover, or remove oil and gas. Thus, we conclude that the oil and gas lease executed in 1983 no longer served a purpose and was terminated by operation of law.

*Cases from Other Jurisdictions*

We do not believe it is necessary to turn to cases from other jurisdictions, but we will briefly discuss the Alabama Court of Appeal's opinion in *Clayton v. Clayton*, 75 So. 3d 649 (Ala. Civ. App. 2011), *cert. denied* No. 1100716 (Ala. August 5, 2011). While the Barkers argue that the majority opinion in *Clayton* is instructive to the application of the doctrine of merger to joint tenancy, COTA found that the dissent in that case "is most consistent with Kansas law." Although we find the facts of the *Clayton* case to be distinguishable from the present case, we find the legal principles set forth in the majority opinion to be more consistent with both Kansas law and the Restatement (Third) of Property than those stated in the dissent.

The facts in the *Clayton* case are substantially different from those in our case, and we will not set them forth in detail. Briefly, the *Clayton* case involved a son who inherited—as a joint tenant with his son—real property from his mother that had previously been leased to him. Prior to his mother's death, the son had subleased the mining rights to a third party. Following the mother's death, the grandson successfully petitioned to receive half of the royalties under the sublease with the mining company. In ruling in favor of the grandson, the majority concluded that the previous lease between the mother and son had merged into the son's ownership of the property as a joint tenant upon her death. 75 So. 3d at 653-54.

In reaching this conclusion, the majority in *Clayton* found as a matter of law that " '[in] a joint tenancy each tenant . . . owns the whole.' " 75 So. 3d at 653. Certainly, this statement is consistent with Kansas law and the Restatement (Third) of Property. Likewise, the majority noted " 'the general rule of law . . . that when a greater and less, or a legal and equitable estate, meet and coincide in the same person, they are merged, the one drowned in the other.' " 75 So. 3d at 653. This statement is also consistent with

Kansas law and the Restatement (Third) of Property. The majority then quoted an Alabama Supreme Court opinion for the proposition that " '[t]here can be no greater absurdity, than to place [a person] in the relation of being his own landlord, and his own tenant, at one and the same time; bound himself to pay, and to receive rent.' " 75 So. 3d at 653 (quoting *Otis v. McMillan & Sons*, 70 Ala. 46, 59 [1881]). Even though we can imagine greater absurdities, the proposition is also illogical under Kansas law and the Restatement (Third) of Property.

On the other hand, as the majority correctly pointed out, the dissent in *Clayton* appears to discount—if not ignore—the well-settled rule that a joint tenant owns an undivided interest in the whole property. See 75 So. 3d at 654. Moreover, the dissent takes the position that even if joint tenancy amounted to a unification of the freehold and leasehold estates, the doctrine of merger should not apply if it works as a disadvantage to the prior owner of one of the estates. 75 So. 3d at 659 (Moore, J., dissenting). This is probably true in Kansas as well. See *Aguilera v. Corkill*, 201 Kan. 33, 38, 439 P.2d 93 (1968) ("The doctrine of merger has its foundation in the convenience of the parties and should be determined from their intention."). But in the present case, there is no suggestion that application of the doctrine of merger would defeat the intent of Robert's mother or inconvenience Robert and Gay.

In passing, we also note the opinion in *Zanelli v. McGrath*, 166 Cal. App. 4th 615, 82 Cal. Rptr. 3d 835 (2008). Similar to the present case and the majority opinion in *Clayton*, the California Court of Appeal concluded that the doctrine of merger can apply to cases involving joint tenancy. In reaching this conclusion, the California court correctly noted that Restatement (Third) of Property: Servitudes § 7.5, comment a, "expressly includes 'a group of persons' in its statement of the principle and rationale for extinguishment by merger." 166 Cal. App. 4th at 625. Thus, the California court held that joint tenancy—where more than one person owns the whole estate in fee simple, not merely a fractional share—"is exactly the 'unity of title,' or as we prefer, the 'unity of ownership," required for finding an easement extinguished by merger." 166 Cal. App. 4th at 632.

*Conclusion*

In summary, we conclude that the oil and gas lease executed in 1983 no longer served a purpose and was terminated by operation of law upon the death of Robert's mother in 2009. Although we recognize that applying the doctrine of merger often involves a question of fact, judgment as a matter of law is appropriate in this case because the parties do not dispute the facts. In light of our holding regarding the doctrine of merger, it is not necessary to reach the merits of the Barkers second issue of whether COTA deviated from a prescribed procedure set forth in the Oil and Gas Appraisal Guide.

Reversed and remanded with directions to enter summary judgment as a matter of law for the Barkers.